MORITZ WALTER, ISAAC N. WALTER, CLARENCE R. WALTER AND MOSES HELLER, AS EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF HERMAN N. WALTER, DECEASED, RESPONDENTS, v. ANNA KEUTHE, OTHERWISE KNOWN AS ANNA KEUTHE WALTER, APPELLANT.

Submitted March 26, 1923—Decided June 18, 1923.

1. A party who has appeared and defended his cause may not be heard in the appellate court on any point which has not been heard in the court of the first instance, unless such point goes to the jurisdiction of the subject-matter, or when a question of public policy is involved.
2. An appeal will not lie from a judgment by default. If the default was not voluntary, and defendant had a good and legal defence to the action, the proper course was to apply to the court below to vacate the judgment and for leave to file an answer, upon presenting to that court facts from which it would appear that there was a meritorious defence.

---

On appeal from the Supreme Court.

For the appellant, *Stover & Pellet* (*Otmar J. Pellet* and *Harlan Besson,* of counsel).

For the respondents, *Treacy & Milton* (*John Milton,* of counsel).

The opinion of the court was delivered by

KALISCH, J.    A judgment was entered by default, in the Supreme Court, for the sum of $4,428.51 and costs, in favor of the plaintiffs below against appellant, defendant below, in an action brought by the former against the latter to recover the amount alleged to be due on a judgment obtained by the plaintiffs against the defendant in the Supreme Court of the State of New York. The exemplified copy of the judgment, which was sued upon and made the basis of the judgment from which this appeal was taken, shows that in the proceedings had in the Supreme Court of the State of New York the defendant appeared and filed an answer to the plaintiff's action and was represented by counsel at the trial of the issue, presented by the pleadings in the case, before a referee to whom the cause had been referred by that court, and that a judgment was subsequently entered in said court, upon the findings of the referee, for the sum of $4,317.97, with costs.

The appellant now seeks for the first time, by this appeal, to question the validity of the judgment entered by default in the court below.

. An appeal will not lie from a judgment by default. The contrary to this, which obviously is pure *dictum,* was stated by Judge Nevius, in *Hugg et al.* v. *The Inhabitants of Camden,* 20 N. J. L. 588. In that case the defendants appeared to the action and the question presented was whether the plaintiff in error was entitled to his writ of error, notwithstanding that the amount of damages was confessed by them, the contention being that such confession operated as a release or waiver of any error if there were any.

A like question came before this court in *Townsend* v. *Smith,* 12 N. J. Eq. 350, where it was held that a decree entered against a defendant by default, the cause having been regularly noticed for argument, bars his right of appeal from such decree rendered in his absence; but that if the absence was involuntary or accidental and a defence was intended to be made, the remedy is by petition to the Chancellor for a rehearing. `

Chief Justice Green, in delivering the opinion of the court (at *p.* 353), said: "In such case, by the well settled rule of the House of Lords, in England, and of the Court of Appeals of the State of New York, no appeal will lie. (Citing numerous cases.)

"The rule is founded in reason, and is applicable to the practice of this court, under the constitution and laws of this state. If the defendants voluntarily absent themselves from the hearing it may be fairly presumed that no defence is insisted on. (Cases cited.) * * * This court sits, not to exercise original jurisdiction, but to revise the decisions of the Chancellor.

"The constitution requires that he shall inform this court, in writing, of the reasons for his decree. It contemplates that the questions to be heard and considered by this court should have been heard and decided by the Chancellor. The practice in the House of Lords is as strict, in this respect, on the equity side of the court, as at law. In *Chanley* v. *Lord Dunsany*, 2 *Scho. & Lef.* 712, Lord Eldon said: 'If this cause had been heard in the Court of Chancery or Exchequer, in England, no client could have induced a counsel to make that point in the bar of this house, under such circumstances; because such counsel, having been previously conversant with the cause, would have known that, as it was not made below, it could not be made by way of appeal.'

"The rule which denies to a party who makes default at the hearing in the court below the right to appeal was recognized and approved, and the grounds upon which it rests, were very clearly stated by Chancellor Kent, in *Gelsten* v. *Hoyt,* 13 *Johns. Ch.* 576. It is not a mere technical rule, but is founded upon salutary principles, the violation of which would lead to serious evils in the administration of justice. It is true that the constitution gives to every party aggrieved by a decree the right of appeal; but it is equally true that the right is to be enjoyed and exercised, subject to the regulations of law, and to the rules and practices of the court. We are all of the opinion that the appeal must

be dismissed." See *New Jersey Building Loan and Investment Co.* v. *Lord,* 66 *N. J. Eq.* 344.

Pursuing this discussion a little further, the task would not be complete without citing the pertinent and illuminating discussion of Chancellor Kent, in *Gelston* v. *Hoyt,* 13 *Johns.* 561, 577, where that learned jurist said: "This is a just and wise rule; for the very theory and constitution of a court of appellate jurisdiction only is the correction of errors which a court below may have committed, and a court below cannot be said to have committed an error when their judgment was never called into exercise, and the point of law was never taken into consideration, but was abandoned, by the acquiescence or default of the party who raised it. To assume the discussion and consideration of a matter of law which the party would not discuss in the Supreme Court, and which that court, therefore, did not consider, is to assume, in effect, original jurisdiction. It is impossible to calculate all the mischiefs to which such a course of proceeding would lead. Either party would then be able, in every case, to bring his question of law, as new undiscussed points, before this court. This would, indeed, be leaving the Supreme Court, with its plentitude of power, to enjoy the *otium cum dignitate* in harmless repose; but this was never the intention of the constitution. That court was created with all its competence and organs to be the great trustee, the tutelary guardian of the vast body of the common law. What good motive can a party have who will not argue a law question in the Supreme Court, but insists on bringing it here to be exclusively discussed? It is according to the genius of our whole judicial establishment that the court which originally decides a cause should be subject to review by another court; but on the plan pursued in the present case, this court, though only a court of review, will be the first and the last, originally and finally, to decide the law."

We have repeatedly held that a party will not be heard as to a question which could have been, but was not raised in an intermediate court of appeals, except where the question goes to the jurisdiction of the subject matter, or where a

question of public policy is involved. *State* v. *Shupe,* 88 *N. J. L.* 610; *Ruggles* v. *Ocean Accident, &c., Corp.,* 89 *Id.* 180; *McMichael* v. *Horay,* 90 *Id.* 142; *Kennedy* v. *Coon,* 91 *Id.* 100; *State* v. *James Snell et al.,* 96 *Id.* 299.

Reference is made to these last mentioned authorities because they demonstrate with what uniform consistency and rigor our appellate courts hold that even a party who has appeared and defended his cause may not be heard on any point which has not been raised in the court of first instance, unless such point goes to the jurisdiction of the subject matter, or where a question of public policy is involved.

But in the present case the defendant was duly summoned to appear and to answer the plaintiffs' action in a court of general jurisdiction, which court had not only obtained jurisdiction of the person of the defendant, but also had jurisdiction of the subject matter in controversy; nevertheless the defendant sat supinely by and let judgment go against her by default, and then after waiting till within a day or two of the expiration of the time to appeal, she appeals to this court, and attempts to raise questions of law and fact which by proper pleadings could have been raised at the trial.

The viciousness of such a course of procedure and the harmful effects resulting therefrom upon the orderly administration of justice are apparent and have been foreseen and forcefully pointed out in the above citations from the opinions of Chancellor Kent and Chief Justice Green.

Now if the defendant had intended to defend the action against her and her default was not voluntary, and if she had a good and legal defence to the plaintiffs' action upon the merits of the case, her proper course was to apply to the Supreme Court to vacate the judgment and for leave to file an answer, and upon showing that her default was not intentional, and by presenting facts from which it appeared that she had a meritorious defence the court unquestionably would have granted the relief asked; but this the defendant did not see fit to do.

It is apparent, however, from the record before us that she had no meritorious defence.

The constitutional provision requires full faith and credit to be given in each state to the public acts, records and judicial proceedings of every other state.

The only two defences of which the defendant could have availed herself, if they existed, were, firstly, that the court was without jurisdiction of the person or of the subject matter (*Jardine* v. *Reichert*, 39 *N. J. L.* 165) ; secondly, that the judgment was procured by fraud (*Supreme Council of Royal Arcanum* v. *Carley*, 52 *N. J. Eq.* 642; *Fairchild* v. *Fairchild*, 53 *Id.* 678).

It is also well settled that the validity of a judgment of another state cannot be impeached for any supposed defect or irregularity in the transaction on which it was founded, and no defence can be interposed in an action upon such judgment upon matters existing before its recovery. *National Bank* v. *Wallis*, 59 *N. J. L.* 46.

For the reasons stated the appeal is dismissed, with costs.