SEVERINO GAIDO,

*Plaintiff and Respondent,*

vs.

LARS TYSDAL,

*Defendant and Appellant.*

(No. 2507; September 11, 1951; 235 Pac. (2d) 741)

494

For the defendant and appellant the case was submitted upon the brief of McAvoy & Lowe, and also oral argument of Robert S. Lowe, of Newcastle, Wyoming.

For the plaintiff and respondent the case was submitted upon the brief of Wakeman & Jones and oral argument of E. Wakeman of Newcastle, Wyoming.

## OPINION

RINER, Justice.

The District Court of Weston County entered a judgment against the defendant Lars Tysdal in an action wherein Severino Gaido was plaintiff and Lars Tysdal and Lloyd Tysdal were defendants. The defendant, Lloyd Tysdal, was by the judgment aforesaid dismissed out of the case and no question arises here in consequence of the court's ruling on that matter. The judgment against his father, Lars Tysdal, is the one which is attacked by the latter in this direct appeal proceeding.

The alleged facts presented for our consideration may be gathered readily and with reasonable accuracy from a brief outline of the pleadings of the parties.

Plaintiff's petition filed October 8, 1949, states in substance in paragraph No. 1 that the defendants were on December 16, 1941, the owners with right of disposal of certain timber lands of about 1000 acres in the county aforesaid which are described by section, township and range; that defendants sold all of the timber on these lands to plaintiff under a written contract of sale, copy of which is attached hereto and made a part of the pleading. In paragraph No. 2 of the plaintiff's petition it is stated that at the time of entering into this contract of sale plaintiff paid the defendants pursuant to said agreement the sum of $500.00 as advance payment and for stumpage for timber to be taken from said land.

In paragraph No. 3 it is also averred that thereafter on December 30th, 1942, the parties agreed to amend this contract or rather to abrogate it and did so by a new agreement also in writing, copy of which is at-

tached to and made a part of the petition. In paragraph No. 4 it is alleged that at the time this new contract was signed by the parties it was agreed that plaintiff should have the right to remove only 100,000 feet of timber from said lands as set forth in said contract. The first contract above mentioned provided that Gaido could cut all of the timber on these lands with certain limitations as to size and during a period of three years from December 16th, 1941. The amendatory written contract required Gaido to cut and take the full amount of 100,000 feet as aforesaid within one year from the date of the amendatory contract and in such a manner that the remaining timber of Tysdal would be in a compact and even area.

In paragraph No. 5 it was alleged that:

"* * * following the execution of the contract Exhibit "B" hereto, the Defendants came to the Plaintiff and advised the Plaintiff that they had an opportunity to sell the said lands or the timber thereon to the Golden Gate Mine and Timber Company and proposed to Plaintiff that he waive his right to take said 100,000 feet of timber from said lands, to permit them to complete the sale of the same and that upon such sale being made the Defendants herein would return to the Plaintiff the sum of $500.00 theretofore paid over to them under the provisions of said contracts."

and in paragraph No. 6, that:

"* * * such offer was accepted by this Plaintiff and that the parties hereto then and there entering into an oral agreement by virtue thereof and Defendants agreed to return and pay over to Plaintiff said sum of $500.00 upon making sale of said lands or timber thereon to said Golden Gate Mine and Timber Company and that in accordance with such oral contract, Plaintiff herein refrained from taking said 100,000 feet of timber from said lands and never at any time took any portion thereof and has never received any consideration of any nature or sort for the sum of $500.00 so paid over by him to the Defendants."

500

In paragraph No. 7, it is alleged that defendants sold to the Golden Gate Mine & Timber Company all of the timber on said lands and executed a conveyance to the company last mentioned. That since making this sale the defendants neglected and refused to pay plaintiff the said sum of $500.00 as agreed. This sale to the Golden Gate Mine & Timber Company frequently referred to in the record as the Homestake Company was completed on January 14, 1946, when the $500 payment became due to plaintiff from defendants. Judgment for that amount with interest from the date last mentioned was prayed.

There were separate answers filed by Lloyd and Lars Tysdal on November 8, 1949. Lloyd disclaimed any interest in the matters alleged in plaintiff's petition and stated that he signed the two written contracts described above as Lars' (his father's) request without any consideration whatsoever. The separate answer of Lars Tysdal embodied a general denial of the allegations of plaintiff's pleading except as admitted or qualified.

The allegations of paragraph No. 1, of plaintiff's pleading are admitted by this instrument and also that he (Lars) signed Exhibit "B" (the second contract). This defendant also admits the averrments of paragraph No. 3, of plaintiff's pleading. Paragraph No. 4, of Lars' answer sets forth that:

"He admits that he sold and transferred to the Golden Gate Mine and Timber Company all of the timber situated upon said lands as in Plaintiff's Petition alleged and admits that he executed a conveyance thereof but denies specifically that the Plaintiff at the time of the sale of said timber to said Golden Gate Mine and Timber Company, the Plaintiff had any interest in said timber whatsoever and alleges the fact to be that on January the 4th, 1946 he sold said timber to said Golden Gate Mine and Timber Company."

He prayed that plaintiff's petition be dismissed with costs to the defendant, Lars.

The issues being thus framed the cause was tried to the court without a jury on April 4, 1950 and on July 10, 1950, the court entered its judgment as above indicated, said judgment omitting certain preliminary recitals reads:

"* * * and the Court having taken the same under advisement for written argument, and briefs on behalf of each of the parties having been presented to the Court, and the Court having read and considered the pleadings and the testimony and argument of counsel and having read and considered the written briefs filed by counsel for the respective parties herein, and now being fully advised in the premises, all and singular, finds:

That the Defendant Lloyd Tysdal is not liable to the Plaintiff in any manner by reason of the cause of action herein set up against him and that said cause should be dismissed as to the Defendant Lloyd Tysdal; and the Court further finds generally in favor of the Plaintiff and against the defendant Lars Tysdal; that the Plaintiff is entitled to have and recover of and from the Defendant Lars Tysdal the sum of Five Hundred Dollars ($500.00) with interest thereon at the rate of Seven Percent (7%) per annum from February 14, 1946.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

That this action be dismissed as to the Defendant Lloyd Tysdal;

That this Plaintiff have and recover of the Defendant Lars Tysdal the sum of Five Hundred Dollars ($500.00) with interest thereon at the rate of Seven Percent (7%) per annum from February 14, 1946 amounting in all to the sum of One Hundred Fifty-four Dollars ($154.00) as of this date, together with plaintiff's costs herein expended taxed by the Clerk of Court at the amount of $9.00."

The contentions advanced by the appellant Lars against this judgment are by counsel stated in their brief work as follows relative to the oral contract pleaded by plaintiff:

"1. That the alleged and purported agreement of the parties is wholly and entirely void by virtue of the same being an agreement for the sale of real estate not in writing, or not accompanied by a memorandum, signed by the parties to be bound thereby.

"2. That, if the agreement be construed to concern standing timber treated as personal property rather than as real property, then the agreement is not enforceable by action because the buyer did not accept part of the goods nor did he actually receive the same, nor did either of the parties give something in earnest to bind the contract, or in part payment, nor was there some note or memorandum in writing made and signed by the party being charged.

"3. If the above two contentions be not considered sufficient by this Court to reverse the Judgment of the trial Court, it is our third contention that there should be a modification of the amount of the trial Court's Judgment. As shown in the second contract, Plaintiff's Exhibit 2 (R.A. p. 122) respondent cut and removed 60,000 feet of timber, which, calculated at $3.50 per thousand feet, should have netted Appellant $210.00, stumpage—payments."

Appellant's counsel have frankly but without citation to our cases stated in their brief that:

"As a premise and by way of preliminary statement, we must assume at the outset that the trial Court found that the parties made an oral contract or agreement upon the subject matter of the suit; and, in rendering the Judgment here in the portions thereof from which this appeal is taken, the trial Court must have the benefit of the rule that the trial Court's findings upon conflicting testimony will not be disturbed in this Court when there is substantial evidence tending to support the Judgment and the other, equally well-established rule where there are assignments of error that the

Judgment of the trial Court is 'not-sustained by sufficient evidence' and 'is contrary to law,' this Court 'must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it.'" (Jacoby v. Town of the City of Gillette 62 Wyo. 487, 494; 174 Pac. 2d 505 and cases cited).

There can be no doubt that the oral contract as pleaded in plaintiff's petition must be taken as established in this litigation as the plaintiff's testimony clearly was to the effect that the parties did so agree and his testimony on the point was equally clearly corroborated by the testimony of his wife, Marie, who was present at conversations held between Gaido and Lars when the matter was discussed by them. It is true that Lars denies that these conversations occurred and that he made no such agreement. But recurring to the conceded rules supra by which our rulings here are controlled, the trial court's findings—general in character against the defendant—must stand. The testimoney of these witnesses was substantial, reasonable in view of the entire record before us and the trial court was warranted in believing it.

So far as the contentions of appellant Nos. 1 and 2 supra are concerned they may be considered together and can be reduced to a solution of the legal query whether an executory contract for the sale of land can be rescinded by an oral contract of the parties thereto, especially when, as in the case at bar, one of the parties (the plaintiff) has fully performed his obligations under that oral contract. Whether the standing timber on the property in question be regarded as real property or personal property the result under the authorities to be presently reviewed will not be changed. An examina-

tion of the record discloses that both plaintiff and Lars Tysdal agree in their testimony that after the making of the amendatory contract aforesaid the plaintiff removed no more timber from the described property. As a consequence the property was in that situation sold by Lars to the Golden Gate Mine & Timber Company and the defendant gave a warranty deed to said Company, but reserved to himself that portion of the lands which at the time of the execution of the instrument had no timber thereon. This deed states that for this conveyance to the Homestake people, Lars received $4,025. It is a fair inference that by inducing plaintiff to agree to refrain from cutting any more timber than he had already taken from the premises Lars Tysdal was enabled to make the sale of these lands to the Homestake people and pay off the balance of the purchase price which he owed to a Mrs. Roberts, the original owner of the timber lands.

The record discloses also that the plaintiff borrowed the amount of $500 from a bank giving a note therefor which plaintiff himself paid. This sum was paid over by Gaido to Lars and by the latter to Mrs. Roberts to apply on the purchase price of the property as was also a note for a similar amount signed by both Lars and the plaintiff and which Lars himself ultimately paid. The record additionally tells us that the reason the amendatory contract (the second contract) was prepared was to speed up the money payments derived therefrom so that Lars could meet his obligations to Mrs. Roberts for the original purchase money. Even so this money evidently did not arrive speedily enough to accomplish the purpose for which the contract had been prepared and executed by Lars and Gaido. Hence the oral contract was made by these parties and an arrangement to sell the property to the Homestake people negotiated which, when consumated, enabled Lars to pay all money

due Mrs. Roberts. At that time as Lars himself testified his financial condition was "very, very poor."

27 C.J. 332 section 419 states that:

"It is generally held that an executory written contract within the statute of frauds, and specifically, an executory contract for the sale of real or personal property, may be rescinded and discharged by mutual agreement orally expressed, the statute having no application to the latter agreement."

An examination of the authorities referred to in the cited text shows situations for the most part resembling those presented by the case before us now. See also 27 C.J. 350 section 430, where this is said:

"* * * But the great weight of authority supports the rule that the statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue upon the contract in a court of law; he is not compelled to abandon the contract and sue in equity or upon a quantum meruit. Particularly is this said to be true where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be performed is merely the payment of money or the performance of some act, the promise to do which is not required to be put in writing."

In 66 C.J. 735 section 300 we find it said:

"In the absence of a statute to the contrary, a written contract for the sale of land, while still executory, may be rescinded by a subsequent oral agreement between the parties, but according to some authority the parol rescission must be executed or partly performed to be effective."

In this connection it will be recalled that it is undisputed that Gaido performed to the letter and in full his obligation under the oral contract of the parties. After that contract was entered into he refrained from taking

any timber whatsoever from the lands in question, surrendering the rights he had under the second amendatory contract. In 38 A.L.R. 295 it is said that:

"It is a rule announced in a number of cases that a parol discharge of a contract for the sale of land is valid."

and cases from some nine or ten jurisdictions in this country are cited. The reasoning of the courts announcing the rule last given is well stated in Proctor v. Thompson 13 Abb. N. Cas. (N.Y.) 340, 343; thus:

"The statute of frauds regulates the manner of making contracts with regard to the proof of them; it requires that the contract for the sale of the lands should be in writing and subscribed by the party by whom the sale was made. The statute avoids all contracts for that purpose which are not made as it prescribes. And, after it is made, it can only be proved by the writing; and all the terms must be contained in the writing itself. It does not permit new specifications to be added by parol to the written paper. It is rigorous in its requirements that the written paper shall contain the whole contract as made. But the statute goes no further than this. It does not attempt to control the performance of the contract, nor to prescribe the manner of its dissolution or of its abandonment. Such things are not necessary to the attainment of its object. That was, that parties should not have burdensome contracts, which they never made, imposed upon them, and that the terms of those contracts should not depend upon the imperfect and uncertain recollection of interested witnesses. But that object is attained by the law which controls the manner of making the contract, and it did not need to prescribe the manner of its performance. Nor has it done so. It has, after the contract is made, left it to be governed by the rules which govern other written contracts, only requiring that the terms of the contract should at all times be sought within the writing.

"It says nothing about its abandonment, or dissolution or rescission. These are not required to be in writing. The statute is not concerned with the contract after it has been made, and to require an abandonment of it to

be in writing would be to add to the statute a provision which it does not now contain; the contract which must be in writing is the contract for the sale. When that is put in writing and signed by the seller the statute is satisfied. A dissolution of the contract comes after this. It is no part of the original nor does it add a new term to it. It is something subsequently existing by the acts of the parties by reason of which the former contract has ceased to be enforceable as a contract, and it does not in any way come within the statute."

The note above referred to in 38 A.L.R. indicates also that in some decisions it is held that while a contract for the sale of land may be abandoned without a writing there must be something more than the mere oral agreement of the parties, i.e. that there must be acts and conduct constituting such abandonment that are positive, unequivocal and inconsistent with the original contract. Such acts we find in the case at bar, viz., the defendant himself, sold the lands with the timber thereon and the plaintiff refrained from cutting and taking any more timber than he had a right to do under the second amendatory contract.

Section 310 page 625 of 49 Am. Juris. says that:

"In determining the effect of a subsequent oral agreement upon the obligations of a contract coming within the meaning of the provisions of the statute of frauds, a distinction is to be drawn between an attempt to modify the written agreement by a subsequent oral one and an oral agreement rescinding or abrogating a written contract within the statute of frauds. While an oral modification of a contract coming within the statute is ordinarily regarded as invalidated by the statute, the trend of modern authority seems toward the view that an oral rescission of an executory contract is valid notwithstanding the contract rescinded was one required by the statute of frauds to be in writing, provided this does not invoke a retransfer of property so as to come within the meaning of a provision relating to sales of property."

Speaking of part performance of an oral contract for the sale of land the same text says page 741 section 436 that:

"It is not necessary that both of the parties shall have made part performance, but it is sufficient that the contract shall have been partially performed by the party seeking to enforce it. It is often laid down as a general rule that the acts relied upon as a part performance to remove a parol agreement for the sale of land from the operation of the statute of frauds must have been performed by the party seeking to enforce the agreement."

In Colvin et al v. Butler 150 Va. 672, 143 S.E. 333, it was held that a:

"Parol contract for sale of land may be revoked by parol through express agreement or conduct indicating mutual assent to termination or abandonment of contracts, inasmuch as written contract or contract under seal may be so rescinded."

In Ely vs. Jones 101 Kansas 572, 168 P. 1102 the Supreme Court of Kansas referring to a well-known text writer quoted with approval as follows:

"In 2 Warvelle on Vendors (2d Ed.) § 826, it is said: 'It has been held in some of the earlier cases that an agreement to rescind is as much an agreement concerning land as the original contract, and hence should be in writing; but all the later cases, both in England and the United States, are unanimous in affirming that a contract in writing, and by law required to be in writing, may in equity be rescinded by parol, and this even though the contract may have been under seal. Such rescission may be effected, not only by an express agreement, but by any course of conduct clearly indicating a mutual assent to the termination or abandonment of the contract. It may consist either of words or acts, and all the circumstances attending the transaction may be shown to prove intention; but if evidenced by acts alone they must be such as leave no doubt as to such intention.' "

In San Roque Properties, Inc. vs. Pierce 18 Cal. App. 2nd 379, 63 Pac. (2d) 1198 the court says:

" 'It has been held many times that a written agreement may be abrogated by an oral contract and that in such a case section 1698 (of the Civil Code) has no application.' Dugan v. Phillips (1926) 77 Cal. App. 268, 277, 246 P. 566, 569 citing cases. This is true, even where the subject-matter of the written contract is the sale and purchase of real estate."

The later case of Strickland vs. Woods Bros. Industrial Corporation 141 Kan. 114; 40 Pac (2d) 367 following the Ely vs. Jones case supra quotes thus:

" 'An agreement to rescind an executory contract for the sale of lands is not within the statute of frauds, and may be proved as any other simple contract.' Syl. par. 2.

'When the contract rests only in parol, partial or full performance is necessary to its validity.' Syl. par. 3.

"And in the opinion after discussing the authorities, it is said: 'And we hold with what we consider to be the weight of authority and sound reasoning that such a contract is not required to be in writing, and may be established by the same kind of proof as other simple contracts.' "

The point before us was discussed by the Court in Epstein vs. Waas 28 N. M. 608, 216 Pac. 506 in this language:

"The first question discussed by appellant concerns the necessity for the contract of rescission being in writing. We could, with propriety, decline to decide this question, as the trial court agreed with him upon this phase of the case, and no cross-appeal or cross-assignments of error have been taken or presented by the appellee. It is perhaps preferable, however, to decide the same, so that the law with regard thereto may be declared. We agree with the trial court. The great weight of modern authority is to the effect that an executory contract involving title to, or an interest in, real estate may be

rescinded by an agreement resting in parol. No detailed discussion of the rule is necessary.

"In 25 R.C.L., p. 712, § 357, it is said:

" 'The general rule permitting written contracts to be abrogated or rescinded by an oral agreement is fully applicable to contracts required by the statute of frauds to be in writing; and such a contract may be the subject of an oral accord and satisfaction, or may be. rescinded by a subsequent oral agreement.'

"And in Maupin on Marketable Title, § 236, the rule is declared in this language:

'It has been decided that a rescission of a contract of sale of lands by mutual agreement, being a contract relating to real estate, is within the statute of frauds, and must be in writing, but the weight of authority is that a rescission by parol is valid.'

"While in Warvelle on Vendors, vol. 2 at section 826, the author says:

" 'It has been held in some of the earlier cases that an agreement to rescind is as much an agreement concerning land as the original contract, and hence should be in writing; but all the later cases, both in England and the United States are unanimous in affirming that a contract in writing, and by law required to be in writing, may in equity be rescinded by parol; and this even though the contract may have been under seal.'

"The texts referred to are supported by the weight of modern authority, with which we are in full accord."

Says the Court of Appeals of Tennessee 31 Tenn. App. 196, 213 S.W. (2d) 523 in Walker et al vs. Wood: "We know of no requirement of the Statute of Frauds, Parol Evidence Rule, or other rule of law that prohibits the oral rescission, cancellation, destruction, or abandonment of a written contract for the sale of land."

The ruling mentioned above in the Epstein case was reiterated by the New Mexico Court in Silcox vs. McLean 36 N. M. 196, 11 P. (2d) 540:

In Fulton vs. Chase 240 Ia. 771, 37 N.W. (2d) 920 the court recently said:

"It is likewise well settled that a mutual rescission of a contract does not require a formal agreement but may result from any act or course of conduct of the parties which clearly indicates their mutual understanding that the contract is terminated. Mortensen vs. Frederickson Bros. 190 Iowa 832, 833; 180 N.W. 977, 982. A mutual rescission requires a restoration of the statu quo so far as possible. Kilpatrick vs. Smith supra."

Interpreting the law of Pennsylvania the Federal Court in Plank vs. Schifter et al 85 Fed. Suppl. 397 announced that:

"In any event, in Pennsylvania it is well established that there can be an oral rescission of a written contract to convey land. Raffensberger v. Cullison, supra: Brownfield's Ex'rs v. Brownfield, 1892, 151 Pa. 565, 25 A. 92. But, as the plaintiff points out, the cases seem to indicate that there can be no parol rescission where the oral agreement is wholly executory. Lauer v. Lee, 1862, 42 Pa. 165; Brownfield's Ex'rs v. Brownfield, supra. That is, there must be an act accompanying rescission leaving no doubt as to intent, such as the yielding up of possession or the cancellation of the written articles of agreement. But the Goucher case, supra, and the cases cited in plaintiff's brief as turning on acts, taking them out of the statute of frauds, Boyce v. McCulloch, Raffensberger v. Cullison, Lauer v. Lee, and Brownfield's Ex'rs v. Brownfield, supra; see also McClue v. Jones, 1888, 121 Pa. 550, 15 A. 659, were all cases in which the vendee had had possession. Under such circumstances, the rule of the necessity of a definite act accompanying rescission has a peculiar significance not apparent in a case where, as here, the vendee never had possession."

In Morris vs. Baron & Co. British Rul. Cas. 9; 399, 430 the purport of the English cases on this point we are considering is stated by Lord Atkinson as follows:

"It is well established, and was not questioned in argument on this appeal, that the parties to an agreement

reduced into writing may rescind that agreement by a parol agreement subsequently entered into by them with that specific intention. There can be no doubt that it is quite competent to the parties to a written agreemen to say by parol, 'Let us put an end to this agreement,' and if that be so, it is, I think, equally competent for them to say by parol, 'Let us put an end to this agreement, start afresh, and make an agreement to a particular effect in substitution for the first.' In my view this would be so though it might happen that, owing to some statutory provision such as that contained in the 4th section of the Statute of Frauds, the parol agreement could not by, reason of its not being evidenced in a particular way, be enforced at law, provided the intention of the parties to rescind the first be clear."

Upon the facts presented here and under the rules conceded by appellant's counsel to be followed in the disposition of this case, we are inclined to the view that the judgment of the trial court should not be disturbed.

With reference to the third contention of appellant supra this may be said: No claim of this kind appears to have been presented to the trial court by the answer of the defendant, Lars Tysdal or by his testimony. In Chittim vs. Belle Fourche Bentonite Products Co. 60 Wyo. 235, 149 P. (2d) 142 it was said:

"The record discloses so far as can be told from an examination thereof that plaintiffs seem not to have raised or presented this question at all in the trial court. In Mercer v. Thorley, 48 Wyo. 141, 43 Pac. (2d) 692, 696, this court said:

" 'Furthermore, the general rule is that questions not raised in the court below, as seems to be true here, cannot be raised on appeal. 4 C.J. 1077. There are some exceptions to that rule. Walter v. Keuthe, 98 N.J.L. 823, 121 A. 624.'

"This matter would not appear to be within the exceptions to the rule referred to in the foregoing quotation.

There are a number of reasons upon which this rule is based, but as stated in 3 C.J. 692, 693:

" "* * * it is usually placed upon the ground that the opposite party should have the proper opportunity to avoid, by amendment or by supplying any defects in his proof, the effect of the objection.' "

Nor is the instant case within the exceptions noted in the cited case of Walter v. Keuthe 98 N.J.L. 823, 121 A. 624 as modifying this rule.

Additionally it is to be observed that Gaido testified that under the first contract he only took 48,000 feet of timber and that he did not cut 60,000 feet as recited in the second amendatory contract. While it is true that Gaido testified that at the time they entered into the first contract he paid stumpage by a check for "$148 and some cents" he also answered the following questions thus:

"Q. How much did you take?
"A. Around 48,000 between 48,000.
"Q. And the contract said 60,000, is that about right?
"A. No.
"Q. When you took this timber off, what did you pay for stumpage on it?
"A. I just paid three and a half a thousand.
"Q. And on that timber you took off, did you pay Tysdal for the stumpage that became due on that?
"A. Yes, sir, what I take off.
"Q. When you made this contract with them, how much money did Tysdal have that you had paid him over and above the stumpage?
"A. $500.00."

In other words while at the making of the first contract he paid evidently an advance payment of $148 and some cents on the stumpage over and above the $500.00 which he also gave Lars for payment to Mrs. Roberts, it is evident that Gaido later also paid Tysdal for the

stumpage that had become due for the timber he removed from the lands in question. It is noteworthy that Lars in his testimony makes no complaint that he was not paid the full amount due him for the stumpage resulting from the timber which Gaido had under the first contract taken from these lands.

Our conclusion is that the judgment of the district court of Weston County was correct and we see no valid reason why we should interfere with it. Accordingly that judgment should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J. concur.