**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5092-17T2

MARCIE SANDERS,

     Plaintiff-Respondent,

v.

SCOTT SANDERS,

     Defendant-Appellant.

_____

        Submitted March 2, 2020 – Decided July 21, 2020

        Before Judges Messano and Susswein.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2823-16.

        Callagy Law, attorneys for appellant (Brian P. Mc Cann, on the briefs).

        Hellring Lindeman Goldstein & Siegal LLP, attorneys for respondent (Sheryl Elizabeth Koomer, Bruce Steven Etterman, and Corinne Bridget Maloney, of counsel and on the brief).

PER CURIAM

Plaintiff Marcie Sanders and defendant Scott Sanders married in 2000. When plaintiff filed her complaint for divorce in 2016, defendant was incarcerated, having been convicted and sentenced in federal district court for the Southern District of New York for multiple counts of mail fraud involving his livery cab business.[1]  Defendant filed a pro se answer to the complaint and also asserted a counterclaim.

At all times relevant to this appeal, plaintiff was employed as the manager of a private club in New York City.  In 1998, she formed a corporation in New York to acquire and hold commercial property in Brooklyn (the Brooklyn property).  In 2005, using marital assets and through a New York limited liability company with plaintiff as its sole officer, the parties acquired a commercial building in Queens (the Queens property).  Defendant operated his business out of these two locations.  In addition, during the marriage and using marital assets, the parties purchased a home on Staten Island, and properties in Saddle River and Fort Lauderdale, Florida, all in plaintiff's name.  At the time of divorce proceedings, plaintiff was residing with the parties' children in the Saddle River property.

---

[1]  Initially, defendant was housed at a federal correctional facility in New Jersey. Later during the proceedings, he was moved to a federal institution in Miami, Florida.

A-5092-17T2

Early in the litigation, plaintiff served a subpoena and deposition notice on the parties' accountant. Defendant moved to quash, and plaintiff cross-moved, alleging defendant had altered the corporate records for the two New York real estate holding companies. The judge found that defendant altered the records while imprisoned to redirect to him all process served on the companies, and defendant had substituted himself for plaintiff as chief executive officer of the corporation holding the Brooklyn property. The judge entered an order in November 2016 (the November 2016 order) that gave defendant thirty days to "reinstate to their original state all records . . . altered with the New York Secretary of State," and restrained defendant "from affecting any asset and/or entity titled in plaintiff's name or held in joint names[.]"

In April 2017, plaintiff filed an order to show cause claiming that defendant violated the November 2016 order by failing to correct the records with the State of New York and terminating the real estate broker she hired to sell the Brooklyn and Queens properties. In May, the judge entered an order (the May 2017 order) again requiring defendant to correct the companies' records and restraining him from any further interference with plaintiff's management and sale of both properties, as well as the now vacant Staten Island property.

A-5092-17T2

After having already obtained an extension to respond to plaintiff's discovery demands, and now represented by counsel, defendant requested a further extension. At a case management conference held on June 29, 2017, the judge granted defendant a further extension to July 14 to provide discovery responses and file a previously ordered updated Case Information Statement (CIS). The order conditioned the extension upon defendant correcting the altered company records. In the interim, defendant had filed lawsuits against plaintiff regarding the New York companies and properties, as well as lis pendens against the real estate. Before filing responses to plaintiff's discovery demands, defense counsel moved to be relieved.

On August 4, 2017, the judge granted plaintiff's motion in aid of litigant's rights. He found that defendant had violated the November 2016 and May 2017 orders restraining him from interfering with plaintiff's control and sale of the properties. The August 2017 order sanctioned defendant $200 per day until he dismissed the New York lawsuits, restrained him again from interfering with plaintiff's efforts to sell the New York properties, ordered the release of $100,000 from defendant's individual retirement account to plaintiff to "establish a fund for the payment of her counsel fees and expenses" in defending the New York lawsuits and cancelling the lis pendens. Critically, for purposes

A-5092-17T2

of our opinion, the order provided that defendant's pleading would be stricken and default entered if he failed to "supply all discovery previously requested or ordered . . . by August 25, 2017[,] upon written confirmation by plaintiff's counsel."

On August 9, a second attorney filed a substitution of counsel. Two days before defendant's discovery responses were due, and one day before a scheduled case management conference, successor counsel requested an adjournment. On the day of the conference, August 24, 2017, counsel sent a letter to the court withdrawing from her representation of defendant; however, prior defense counsel appeared at the conference on defendant's behalf. Defendant still had not furnished discovery. The judge relieved both attorneys and entered an order providing that defendant had until September 29, 2017, to file a substitution of counsel or be subject to default. The order further provided that a default hearing pursuant to Rule 5:5-10 was now scheduled for October 26.

On September 29, successor counsel filed a substitution of attorney and reentered the case. A few days later, she filed a motion, returnable October 27, to: 1) vacate the August 2017 order threatening default unless defendant complied with discovery demands; 2) modify the November 2016 and May 2017

orders to allow defendant "to be involved in the renting or selling" of the New York properties, or, alternatively, order plaintiff to provide defendant "in writing of all dealings and or communications related to the sale of [the] properties"; 3) escrow any closing proceeds; 4) order "[p]laintiff to provide an accounting of all marital monies received since . . . [d]efendant's incarceration"; and 5) set a final discovery schedule. On October 3, 2017, defendant filed a CIS.

On October 6, plaintiff filed a notice of proposed final judgment of divorce. See Rule 5:5-10 (requiring "[i]n those cases where equitable distribution, alimony, child support and other relief are sought and a default has been entered," that the plaintiff serve "a Notice of Proposed Final Judgment . . . not less than [twenty] days prior to the hearing date"). At a hearing on October 31, now represented by a third law firm, defendant moved to vacate default.[2] The judge denied the motion, and we denied defendant's application for emergent relief. The default hearing took place on November 8, with plaintiff

---

[2] It is unclear from the record why the default hearing did not take place on October 26.

as the sole witness. Defendant was represented by counsel who cross-examined plaintiff over four non-consecutive days through December 19, 2017.[3]

During the hearing, defendant moved orally and in writing to vacate default. On February 2, 2018, the judge entered an order denying defendant's request to vacate default and for other relief from earlier orders. Successor counsel moved by way of order to show cause to be relieved again, and the judge granted her motion. The final day of the hearing occurred on April 26, 2018, with defendant representing himself and conducting additional cross-examination of plaintiff.[4]

Defendant's subsequent pro se motion for reconsideration of the February 2018 order was denied, and, on May 25, 2018, the judge entered a final judgment of divorce (JOD) accompanied by a detailed written decision. This appeal followed.[5]

---

[3] We note there was limited hearing time per session, at least in part because defendant appeared by phone and the institution limited the amount of time he could stay on the call. We also note that successor counsel appeared with counsel from the third law firm for two of the four days. Counsel from the third firm conducted all cross-examination of plaintiff.

[4] It is unclear from the record when the third law firm was relieved of representing defendant.

[5] Defendant filed a pro se motion for reconsideration of the JOD, which the judge denied on August 3, 2018, after defendant's pro se appeal had been filed.

A-5092-17T2

Defendant raises two points for our consideration. First, he contends the judge abused his discretion by entering default, refusing to vacate default and proceeding to enter the JOD by default following the hearing. Defendant also argues that the judge mistakenly exercised his discretion regarding equitable distribution. Defendant urges us to vacate those provisions of the JOD and remand for discovery and a new trial. We reject both arguments and affirm.

I.

We initially recognize plaintiff's contention that we should dismiss this appeal because defendant failed to first move in the Family Part to vacate the default JOD pursuant to Rule 4:50-1. She relies in large part on our decision in Haber v. Haber, where we considered a defendant's ability to appeal a default divorce judgment that resulted after the defendant filed an answer and counterclaim but failed to appear at trial. 253 N.J. Super. 413, 414–15 (App. Div. 1992).[6] We held that "a direct appeal will not lie from a judgment by default." Id. at 416 (citing McDermott v. Patterson, 122 N.J.L. 81, 84 (E. & A. 1939), and Walter v. Keuthe, 98 N.J.L. 823 (E. & A. 1923)); accord N.J. Div. of

_____

[6] We do not address the unpublished cases cited by plaintiff in support of her argument. R. 1:36-3.

Youth & Family Servs. v. T.R., 331 N.J. Super. 360, 363 (App. Div. 2000) (citing Haber, 253 N.J. Super. at 416).

> The reason underlying this rule is that the very theory and constitution of a court of appellate jurisdiction is only the correction of errors which a court below may have committed, and a court below cannot be said to have committed an error when its judgment was never called into exercise, and the point of law was never taken into consideration, but was abandoned by acquiescence or default of the party who raised it.
>
> [Haber, 253 N.J. Super. at 416 (quoting McDermott, 122 N.J.L. at 84).]

"The proper course is to apply to the trial court to vacate the judgment[]" pursuant to Rule 4:50-1. Ibid. (citing Walter, 98 N.J.L. at 827).

Plaintiff is undoubtedly correct that defendant never moved in the Family Part for relief from the default JOD pursuant to Rule 4:50-1. However, defendant's reply brief persuasively argues that the circumstances here are sufficiently distinguishable from Haber, most notably by defendant's persistent, albeit unsuccessful, attempts to have the judge vacate the entry of default before and during the default hearing and before the default JOD was entered. Additionally, defendant sought reconsideration by the judge before filing the appeal.

In short, unlike the situation in Haber, where the defendant never appeared after filing his initial pleading, defendant here continued to assert legal positions that were never "abandoned by acquiescence or default[.]" Ibid. (quoting McDermott, 122 N.J.L. at 84). We therefore consider the substance of defendant's argument.

Defendant's essential claim is that the judge "failed to follow the two-step [p]rocess . . . set forth in [Rule] 4:23-5," which is applicable to Family Part actions. See R. 5:1-1 (providing that "[c]ivil family actions shall also be governed by the rules in Part IV insofar as applicable and except as otherwise provided by the rules in Part V[]"). "Rule 4:23-5 codified a two-step procedural paradigm that must be strictly adhered to before the sanction of dismissal of a complaint with prejudice for failing to answer interrogatories or provide other discovery can be imposed." Thabo v. Z Transp., 452 N.J. Super. 359, 369 (App. Div. 2017) (citing St. James AME Dev. Corp. v. City of Jersey City, 403 N.J. Super. 480, 484 (App. Div. 2008)). This two-step process applies to non-compliance in responding to interrogatories (Rule 4:17), demands for documents (Rule 4:18), and physical or mental examinations (Rule 4:19). Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:23-5 (2020). "These procedural requirements must be scrupulously followed and technically

complied with." Thabo, 452 N.J. Super. at 369 (citing Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 95 (App. Div. 2008)).

The premise of defendant's argument is mistaken. As plaintiff properly points out, the judge utilized sanctions available pursuant to Rule 4:23-2 to strike defendant's answer and counterclaim because of repeated, flagrant and contumacious failures to abide by court orders compelling responses to plaintiff's discovery demands.

We start by recognizing that the "standard of review for dismissal of a complaint with prejudice for discovery misconduct is whether the trial court abused its discretion[.]" Id. at 368 (alteration in original) (quoting Abtrax Pharm. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995)). Under Rule 4:23-2, if a party fails to provide court-ordered discovery, the court may issue "such orders in regard to the failure as are just," which includes "striking [the] pleadings . . . or dismissing the action . . . with or without prejudice[.]" R. 4:23-2(b) (emphasis added). Although the sanction of dismissal under that rule "is drastic and . . . generally not to be invoked[,]" a court may do so "in those cases in which the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious." Abtrax, 139 N.J. at 514 (quoting Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 339 (1951)); accord

11

Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005) (dismissal with prejudice for violation of a court order must "evince[] 'a deliberate and contumacious disregard of the court's authority.'" (quoting Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003))).  "[A] party invites this extreme sanction by deliberately pursuing a course that thwarts persistent efforts to obtain the necessary facts."  Abtrax, 139 N.J. at 515.

Here, plaintiff sent interrogatories and requests for documents to defendant in January 2017.  In May, the judge entered a case management order compelling defendant to respond to discovery demands and file a CIS by the end of the month or his pleading would be stricken.  Despite extensions, by the time the court issued the August 2017 order, defendant still had not responded to discovery or submitted a completed case information statement.  In the August 2017 order, the judge again indicated that "defendant's [a]nswer and [c]ounterclaim would be stricken" if he failed to produce all outstanding discovery "previously requested or ordered by the court" by August 25, 2017, which was later extended to September 29, 2017.

Defendant never responded to plaintiff's request for documents and only provided an incomplete case information statement after the extended deadline.  Even after that deadline passed, the court did not immediately issue an order

A-5092-17T2

entering default. Defendant's obstinance was not without consequence, because at the hearing, defense counsel referenced several documents during cross-examination that plaintiff's counsel claimed to have never received. The record fully supports the judge's express finding that defendant's conduct was "egregious, long standing, willful[,] and a deliberate attempt to frustrate the orderly presentation of the case."

Further, the judge was entitled to consider the totality of defendant's contumacious conduct, which went beyond a mere discovery dispute, and which we outlined in detail above. In his final written decision incorporated in the JOD, the judge detailed the totality of defendant's conduct, including his brazen interference with plaintiff's ability to sell the marital properties in direct violation of court orders, and his steadfast refusal to correct corporate records he admittedly altered, together with the discovery violations and failure to file a complete case information statement. All this informed the judge's decision to strike defendant's pleading and deny all efforts to vacate default.

In his reply brief, defendant argues that the court never expressly mentioned Rule 4:23-2. While that may be true, we think it was implicit in the judge's express findings and conclusions. Moreover, nothing in the record suggests that defendant ever objected to the entry of default because the two-

step Rule 4:23-5 procedure was not employed, or, more importantly, that defendant had actually complied with all of his discovery obligations, a necessary predicate for reinstatement of a party's pleadings under that Rule. This late-advanced procedural argument is devoid of any merit and warrants no further discussion. R. 2:11-3(e)(1)(E).

## II.

Defendant challenges the equitable distribution of marital property ordered by the judge in the JOD. Specifically, defendant argues that the judge's valuation of the real estate assets relied on comparative market analyses supplied by plaintiff, and the judge's distribution of those assets was inequitable. We disagree and affirm.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "[F]indings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare, 154 N.J. at 411–12.) On the other hand, "legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v.

Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The "goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (citation omitted). "It reflects a public policy that is 'at least in part an acknowledgement "that marriage is a shared enterprise, a joint undertaking, that in many ways [] is akin to a partnership."'" Thieme, 227 N.J. at 284 (alteration in original) (quoting Smith v. Smith, 72 N.J. 350, 361 (1977)). "Applying the equitable distribution statute, a Family Part judge undertakes a three-step analysis." Ibid. n.4 (citing Rothman v. Rothman, 65 N.J. 219, 232 (1974)). "First, the court must 'decide what specific property of each spouse is eligible for distribution'; second, it 'must determine [the property's] value for purposes of such distribution'; and finally, it 'must decide how such allocation can most equitably be made.'" Ibid. (alteration in original) (quoting Rothman, 65 N.J. at 232).

"When reviewing the equitable distribution ordered after trial, '[w]e must decide whether the . . . court mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings or fact that are contrary to the evidence.'" Tannen v. Tannen, 416 N.J. Super. 248, 281 (App. Div. 2010) (alteration in

15

original) (quoting <u>Genovese v. Genovese</u>, 392 N.J. Super. 215, 223 (App. Div. 2007)), <u>aff'd. o.b.</u>, 208 N.J. 409 (2011). Even after entry of default, the "plaintiff still has an ongoing obligation to persuade the court, by a preponderance of the evidence, that the proposal for equitable distribution is fair and equitable under the specific facts of the case[.]" <u>Clementi v. Clementi</u>, 434 N.J. Super. 529, 532 (Ch. Div. 2013).

In his written opinion incorporated into the JOD, the judge identified all assets subject to equitable distribution pursuant to N.J.S.A. 2A:34-23.1, and all outstanding debts. He reviewed plaintiff's proposal for equitable distribution, the statutory factors and plaintiff's "clear, concise[,] and accurate" testimony during the default hearing. The judge awarded plaintiff the Saddle River home and its contents, and the Florida condominium unit and its contents, except for personal items of the defendant, subject to outstanding mortgages on each property for which plaintiff would be solely responsible. He awarded defendant "one-half of the net proceeds from the sale" of the Staten Island property. The judge concluded the Brooklyn property was a "premarital asset" and ordered defendant to "provide such documents . . . as may be necessary to confirm that the plaintiff is [f]ee [s]imple [a]bsolute owner" of the property. The judge awarded defendant the Queens property.

Defendant argues that the judge erred in his valuation of the real estate because even though defendant was in default, plaintiff was required to produce expert valuation evidence as to each property, and her estimation of market value of the properties was inadequate evidence. See, e.g., Jacobitti v. Jacobitti, 263 N.J. Super. 608, 613 (App. Div. 1993) (noting generally that trial judges are "caution[ed] . . . against fixing market value of real property without the benefit of expert appraisal evidence").

However, both the Staten Island and Brooklyn properties had sold prior to the hearing. There is no question that the sale prices constituted reliable evidence of value that supported the court's valuation as to those properties. See, e.g., Hackensack Water Co. v. Div. of Tax Appeals, 2 N.J. 157, 162 (1949) (noting for purposes of determining fair market value for real estate tax purposes, and subject to other limitations and considerations, "[a] selling price is a guiding indicium of fair value . . . [that] might under peculiar circumstances become controlling").

Regarding the Queens property, which was not encumbered by any mortgage, plaintiff testified that she had negotiated a sale price of $2.8 million but could not consummate the sale because of the lis pendens defendant filed. Plaintiff supplied the court with an offer sheet from February 2017 on a realtor's

stationary that confirmed the relevant terms of the sale. In his decision, the judge also noted that plaintiff had previously prepared a comparative market analysis valuing the property at $2.25 million. Notably, despite extensive cross-examination, plaintiff's testimony was not challenged, nor did defendant's CIS include estimated values for the three properties.

The record also supports the court's valuation of the Saddle River and Florida residences. With respect to the Saddle River marital residence, plaintiff testified that she obtained a comparative market analysis that valued the home at $2.5 million. Defense counsel challenged plaintiff's reliance upon the analysis during cross-examination, and defendant reasserts the challenge before us. Defendant is correct that a comparative market analysis is not reliable evidence of value since it is hearsay. However, plaintiff also testified that the assessed value according to the property tax bill was approximately $2 million; the tax bill was admitted into evidence during the hearing. Additionally, in his net worth statement submitted in connection with his federal sentencing proceeding in 2014, defendant estimated the value of the Saddle River home at $2.4 million. Cf. Esposito v. Esposito, 158 N.J. Super. 285, 294 (App. Div. 1978) (finding corporate net worth statement prepared for reasons unrelated to the divorce litigation as a reliable indicator of value). Defendant's belatedly

filed CIS asserted the value of the property was $4.5 million, but no documentation was annexed to support that figure, which was nearly double what defendant claimed the value was four years earlier.

The court found the Florida residence was valued at approximately $1.1 million based upon plaintiff's testimony, including a comparative market analysis, which was admitted into evidence. The property tax bill, which was also admitted into evidence, assessed the unit at $984,660. Although the comparative market analysis suffered from the same limits noted above, defendant's statement of net worth filed at sentencing only valued the unit at $650,000. In his CIS, defendant valued the Florida residence at $1 million, which is largely consistent with the judge's acceptance of plaintiff's proposed valuation. In short, there was no mistaken exercise of discretion in the judge's valuation of the real estate subject to equitable distribution.

Defendant also argues that the judge erred by failing to assign value to the personal property within the Saddle River and Florida homes. Our review of the record reveals that plaintiff's testimony is this regard was equivocal, at one point estimating the furniture in the Saddle River home was worth $300,000, but later testifying she was unaware of the value of used furniture. Notably, defendant's

CIS included no value for the personal property at either location. The judge did not specifically address the issue.

However, when considering the equitable distribution of all assets, we cannot conclude that the failure to separately value this personal property and specifically account for it in the distribution ordered by the JOD requires a remand. The overall distribution was fair, equitable, and just, with the judge awarding defendant other assets to counterbalance any asserted inequality in the net value of the real estate distributed to the parties.

Family Part judges have "broad discretion" in "allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012) (citing Steneken v. Steneken, 367 N.J. Super 427, 435 (App. Div. 2004)). That inquiry requires a "weighing of the many considerations and circumstances . . . presented in each case." M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) (quoting Stout v. Stout, 155 N.J. Super 195, 205 (App. Div. 1977)). By statute, equitable distribution is "to advance the policy of promoting equity and fair dealing between divorcing spouses[,]" and courts must consider all relevant factors. Barr v. Barr, 418 N.J. Super. 18, 45 (App. Div. 2011); N.J.S.A. 2A:34-23.1. Accordingly, "an equitable distribution does not presume an equal

distribution." M.G., 457 N.J. Super. at 295. Defendant's argument to the contrary lacks sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

We also find defendant's two remaining ancillary arguments lack merit. He asserts that the judge improperly penalized him in the distribution scheme because of defendant's criminal conduct and the fines and restitution ordered as part of his sentence, which were paid from marital assets before the divorce complaint was filed. In Kothari v. Kothari, the defendant argued that because there were no longer any marital funds remaining at the time the plaintiff filed her divorce complaint, there was no basis for an award of equitable distribution. 255 N.J. Super. 500, 509 (App. Div. 1992). We observed that, "[t]he implicit premise of defendant's argument is that dissipation of marital property can only occur after the filing date of the divorce complaint." Id. at 510. We rejected that premise, holding that, "the power to order equitable distribution does not depend upon the 'existence' of marital property on the filing date of the divorce complaint." Ibid. We held that a court may thus impose a cash obligation on one spouse in favor of another for funds dissipated during the marriage, even if such conduct occurred prior to the filing of the divorce complaint. Ibid.

Defendant suggests the payments of fines and restitution were made in an attempt to salvage an ongoing marital enterprise and not an intentional

21

dissipation of the marital assets.  See, e.g., Monte v. Monte, 212 N.J. Super. 557, 567–68 (App. Div. 1986) (recognizing debts incurred through intentional dissipation of marital assets are "no more than a fraud on marital rights" (quoting Sharp v. Sharp, 473 A.2d 499, 505 (Md. App. 1984))).  However, plaintiff was not responsible for defendant's admitted fraud and its consequences.  To the extent the equitable distribution in this case was unequal, the judge's consideration of defendant's criminal conduct that resulted in dissipation of millions of dollars of marital assets before the divorce complaint was filed was not a mistaken exercise of discretion.

Finally, defendant contends that judge erred in determining the Brooklyn property was a premarital asset "immune from equitable distribution."  While the judge at one point said the property was a premarital asset, he nevertheless included it in his discussion of the value of all the real estate.  Moreover, defendant's claim that the distribution ordered by the JOD was inequitable is premised on inclusion of the value of the Brooklyn property in plaintiff's share of the distributed assets, not its exclusion from the list of marital real estate assets.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION