## MECUM v. METZ
### (No. 1034; November 12, 1924; 229 Pac. 1105)

FRAUDS, STATUTE OF—MINES AND MINERALS—ASSESSMENT WORK.

1. As defendant as owner and co-owner had title, though inchoate and defeasible, to unpatented mining claims, an oral agreement to transfer an interest therein *held* invalid under statute and not valid as joint adventure, though interests of defendant's co-owners were to be acquired by forfeiture.

2. Right to acquire by forfeiture the interest of a co-owner who fails to contribute his proportionate part of the annual assessment work, exists only in favor of one who is

a co-owner during the year for which the forfeiture is claimed.

NOTE—See He'adnotes (1) 27 C. J. p. 203; (2) 27 Cyc. p. 594.

APPEAL from District Court, Converse County, RALPH KIMBALL, Judge.

### ON PETITION FOR REHEARING

For former opinion see 31 Wyo. 495; 222 Pac. 574.

William F. Mecum, pro se.

POTTER, Chief Justice.

Within the thirty day period for filing a petition for rehearing after the order affirming the judgment appealed from in this case, a communication was received from the appellant signed in his own name and addressed to the court, which was directed to be filed as a petition for a rehearing, although not so entitled; the appellant, although represented in the cause by other counsel, being, himself, an attorney in good standing in this court. That communication, respectful in form and substance, seemed to us, in effect, to express a doubt whether the court had correctly understood the facts intended to be alleged in the petition to which a demurrer had been sustained resulting in the judgment complained of by the appeal. And in appellant's own language the facts relating to the contract upon which the suit was based and which was held invalid under the statute of frauds are restated as those intended to be alleged by the second amended petition upon which the cause was finally determined.

As shown by the original opinion (222 Pac. 574), the action was brought to compel the specific performance of an oral contract to convey to the plaintiff an undivided one-third interest in and to certain mining claims, in consideration of alleged services of the plaintiff in connection with the perfecting of title thereto. It was stated in the original opinion that the petition also prayed for the recovery of damages. There was in the original petition a prayer for damages, as the reasonable value of plaintiff's services and

of the interest in the mining claims agreed to be conveyed, in default of a conveyance. But it was omitted from both of the amended petitions, possibly for the purpose of submitting to the court the sole question of the right of plaintiff to such conveyance.

A re-examination of the averments of said amended petition, in connection with appellant's restatement of the facts relating to the contract aforesaid, discloses, we think, that the said petition avers the facts substantially as restated by appellant, except, perhaps, in one respect only, and in that particular the difference is not, in our opinion, material; but if alleged as now stated by the appellant, the facts would not take the contract out of the statute of frauds.

The thought of appellant expressed in his communication, which we are considering as a petition for a rehearing, seems to be that the court may not have understood that when the contract was made the defendant was the owner of only a one-third interest in the mining claims, and that plaintiff was not to have any part of that particular one-third, but a one-third interest then held by one or the other of defendant's two co-owners, to be acquired by the defendant through a forfeiture notice for the failure of each to contribute his share of the required annual labor for several preceding years, if and when the claims should be secured free from the conflicting homestead entry then imperilling the title of said claims under the public land laws. The fact that defendant was co-owner only in the case of *four* of the seven mining claims involved in the action is alleged in said petition, and also the names of said co-owners; and that was fully understood by the court. But the petition also alleges that the defendant was the *individual* owner of the *three other* claims, which was and is understood to mean that he was owner of the entire interest in those claims. And indeed, the averment of the forfeiture proceedings by which defendant acquired the interest of his said co-owners refers only to the said four claims in which the defendant is alleged to have been a co-owner with

others. The petition may not, however, clearly aver that the one-third interest in those claims to be conveyed to plaintiff was to consist only of the interest to be acquired by defendant from one or the other of his said co-owners. Nevertheless, it would necessarily be understood from the averments in that connection that the interest of defendant's said co-owners were to be embraced in a division of interest between plaintiff and defendant, since the former, as alleged, was to become entitled to a full one-third interest in each claim. Thus said petition avers that at the time of the making of said oral contract between plaintiff and defendant, the latter "further agreed that if plaintiff succeeded in saving said lode mining claims and in defeating the said homestead entry, he (defendant) would, in due course of business, and in conformity with the laws of the United States advertise out the said delinquent co-owners."

By reason of the situation aforesaid appellant states that he and his counsel took the position that the facts presented a case of joint adventure, taking it out of the statute of frauds; or that it might be called a grubstake contract because of its connection with unpatented mining claims. And he says that defendant and he planned to get the interest of the other two partners, "as they would not do anything more with them," and divide the results "as above indicated." But to limit the interest to be conveyed to the plaintiff in consideration of his said services to the particular one-third to be forfeited by one or the other of the co-owners would not conform to the terms of the contract as stated in the petition. The contract is there stated as follows:

"That on or about the month of January, 1916 * * * the defendant * * * offered to employ this plaintiff as his attorney to represent him in all things * * * on the appeal then pending before the Secretary of the Interior, to secure a hearing on said protest so as to prevent the issuance of patent to the said Homer Demmon on his

homestead entry, and to defeat the said homestead entry in the land department, and to save the lode mining claims aforesaid, and all of the rights and interests of defendant, as owner and co-owner, and the rights and interests of his co-owners therein, and offered, if plaintiff should succeed in saving the rights of the defendant as owner and co-owner, and of his co-owners, in and to the said lode mining claims aforesaid, that he would, by a proper instrument, transfer and convey to this plaintiff *an undivided one-third interest in and to each and all of the said lode mining claims;* that thereupon this plaintiff agreed to and with the defendant to accept said employment   *   *   *   and thereupon the defendant employed plaintiff   *   *   *   and the plaintiff   *   *   *   immediately entered upon and engaged in such employment and rendered and performed the services hereinafter set forth, and that said oral agreement was then and there fair, just and reasonable to both parties thereto.''

Then, almost immediately, follows the averments stating the defendant's individual ownership of three of the claims and his co-ownership with two other named persons in the four other claims, and the fact that each of defendant's said co-owners was in default of contribution of his proportionate part of the annual assessment work, and that the defendant, at the time of said oral contract, agreed also to advertise out his said co-owners in said four claims.

And here let it be stated that the petition then alleges the securing of the title to all of the mining claims free from the homestead entry, that thereafter the plaintiff prepared for defendant appropriate notices for the purpose of forfeiting to him the interest of his co-owners in said four claims, ''and that the defendant did, thereafter, cause to be duly published   *   *   *   the said forfeiture notices, as required by law,'' that the said co-owners failed to comply therewith or refund their proportionate part of the annual assessment work for the years mentioned (1912 to

1916 inclusive), and ''that, as a consequence thereof, and at the expiration of the time allowed by law, the defendant Henry Metz became the absolute and unqualified owner of each and all of the said four lode mining claims  *  *  * and is now, and has been ever since the completion of the publication of said forfeiture notices, and the time limit allowed by law within which to comply therewith, the legal owner of the said lode mining claims.'' Following that it is alleged that after the defendant had become such owner, ''the plaintiff duly demanded of the defendant a conveyance to him by appropriate instrument in writing of an undivided one-third interest in and to each and all of said lode mining claims.''

As said in the original opinion, the contract in question could not be held to be one of association to jointly obtain title to mining claims under the public land laws for the reason that the defendant's title, including that of his co-owners, though inchoate, was valid even at the time the plaintiff came into the case, though it was endangered by the conflicting homestead entry of Demmon. In other words, so far as locaters of mining claims or their grantees could acquire title to unpatented mining claims under the public land laws, title had been acquired to these claims before the making of the contract between plaintiff and defendant. No further act was necessary to keep that title alive while the claims remained unpatented except performance of the annual labor required by law, at least so far as any question in this case is concerned. That title might be lost through the success of the homestead claimant. But the defeat of that claimant through the decision of the Secretary of the Interior, and his subsequent relinquishment, as alleged in the petition, left the defendant and his co-owners respectively holding the title to the ground as mining claims; wherefore, a conveyance was necessary to transfer an interest to the plaintiff. And as previously held the alleged contract for such a transfer, under all the authori-

ties and what we believe to be the settled law upon the sub-
ject, comes within the provision of our statute of frauds.

The Alaska case (Cascaden v. Dunbar, 2 Alaska 408)
cited in the former opinion is quite in point upon the facts.
There the contract was that the plaintiff, at his own ex-
pense, was to search for, prospect and stake certain placer
mining claims, and in addition to claims staked for himself
and in his name, he was to stake for and in the name of de-
fendants, or either of them, other placer mining claims, in
consideration whereof the said defendants agreed that they
would forthwith, after such staking, fulfill the other require-
ments of the rules and regulations governing the location
of placer mining claims ''and give to the plaintiff a share
and interest of one-half in all such locations so made by
him for them.'' And it was held that by locating claims in
the name of a defendant, the latter became the owner there-
of, which could not be orally transferred or conveyed. The
court said :

''To paraphrase it, the alleged oral agreement was that
'after such staking' the defendants would record 'and give
to the plaintiff' an interest. The defendants did not agree
to give until after their title vested by staking; it was an
agreement that in consideration of Cascaden's services in
staking they would thereafter convey to him an interest.
The allegation is that he was to acquire his title by virtue
of a conveyance from defendants subsequent to the loca-
tion and not from it. His original contract with Bennett
was not a grubstake agreement for a joint interest in the
mine with Bennett by virtue of the location, but was one
which pledged Bennett to convey an interest after he ac-
quired title by location; being oral, it was within the stat-
ute of frauds and void.''

And in Moore v. Hamerslag, 109 Cal. 122, 41 Pac. 805,
also cited in the former opinion, it appeared that the plain-
tiff had located a mining claim in the name of the defend-

ant, signing the defendant's name to the location notice, which was posted and left on the mine, and that later he left a copy of the notice with the county recorder, to be recorded, "unless he should otherwise instruct him within a few days;" that he gave no further instructions, but shortly thereafter, told the defendant what he had done and suggested that he allow the mine to stand in his name, and deed it back to him, the plaintiff, as another party had formerly agreed to do. That, the plaintiff testified, the defendant said would be agreeable to him. But the defendant thereafter conveyed the mining claim to another party and refused to convey to plaintiff, who thereupon brought his action to recover damages for the breach of the agreement to make such conveyance. The court held that the legal title which vested in the defendant by the posting and recording of the location notice in his name could not be defeated by a subsequent parol agreement that it should be held by him in trust, and said:

"By virtue of the acts done by the plaintiff in reference to the mining claim in question, the defendant became vested with the legal title thereto as fully as if the plaintiff had located the claim in his own name, and afterwards, by a conveyance absolute in form, and without any consideration, transferred it to the defendant. The defendant could not, by any oral declarations, subsequent to such conveyance, render himself a trustee for the plaintiff, or bind himself to transfer the claim to him."

Nor, unfortunately for the palintiff in this case, who seems to have performed valuable services without receiving compensation, relying upon defendant's oral promise to convey to him an interest in the property, does the alleged fact that when the contract was made the defendant owned only a one-third interest in certain of the mining claims, take the contract even as to those claims out of the statute of frauds. For the right to declare a forfeiture of

the interest of defendant's co-owners had accrued, at least as to the labor for the years preceding 1916, and the acquiring of such title was not a proper subject of an association or joint adventure agreement between plaintiff and defendant. The law seems to be well settled that the right to acquire a defaulting co-owner's interest exists only in favor of one who is a co-owner during the year for which the forfeiture is claimed. 27 Cyc. 594; Turner v. Sawyer, 150 U. S. 578, 14 S. Ct. 192, 37 L. ed. 1189. In the cited case the forfeiture notice was published by one who was not a co-owner for the year in which the default had occurred. The situation is shown and the principle stated by the court as follows:

"It will be observed that the right to give this notice of a claim for contribution is limited to a *co-owner* who has performed the labor. Turner was not a co-owner with Sawyer at any time during 1884, as Alfred A. K. Sawyer (the one against whom the notice was published) did not receive his deed from Amos Sawyer until January 12, 1885, and Turner did not receive his deed from the sheriff until March 3, 1885. He did, however, hold an inchoate title by virtue of the subsequent assignment, August 25, 1885, of the sheriff's certificate to him. He appears also to have obtained the assignment of certain other judgments which had been recovered by William Hunter against Sanderson and Smith. These judgments were assigned to him August 27, 1884, sales made under them January 13, 1885, and certificates of sale issued to Turner, who thus became the purchaser under these judgments. Neither of these, however, made him a co-owner during the year 1884 within the meaning of the statute, which, providing as it does for the forfeiture of the rights of a co-owner, should be strictly construed."

It was necessary, therefore, that the defendant himself, as the co-owner who had performed the labor, give or publish the forfeiture notice, and thereby acquire the title of

the defaulting co-owners. And the petition avers in that respect: First, that the defendant agreed to "advertise out" his co-owners, second, that he did so, and, third, that thereupon he became the absolute owner of said mining claims.

The situation as to the interest of the co-owners to be thus acquired would be the same, therefore, so far as the question before us is concerned, as in the case of the title held by the defendant at the time of the making of the contract, bringing the alleged contract in either case within the statute of frauds, as an agreement or contract for the sale of real estate. A rehearing must therefore be denied.

*Rehearing Denied.*

BLUME, J., and ILSLEY, District Judge, concur.