Norman B. ALLEN, Jr., Appellant
(Defendant below),
and
Virginia R. Allen (Defendant below),
v.
Norman B. ALLEN, Appellee
(Plaintiff below).

No. 4541.

Supreme Court of Wyoming.
June 4, 1976.

1138

John M. Daly, Burke, Daly & Maycock, Gillette, signed the brief and appeared in oral argument on behalf of the appellant.

Cecil K. Hughes, Sundance, signed the brief and appeared in oral argument on behalf of the appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Appellee-plaintiff is the father of appellant-defendant. The plaintiff was the record owner of a tract of land known as the River Place, upon which he lived and farmed. The defendant was raised there and for a time after his marriage, he and his wife lived on the homestead with the plaintiff and his wife before defendant's mother died. The defendant and his then wife, Virginia, a defendant in the district court but not a party to this appeal, wanted a place of their own and found a tract of land to buy, known as the Haptonstall Place. However, it was not a large enough economic unit to qualify for a Farmers Home Administration loan for its purchase.

By interim financing arranged by plaintiff, the Haptonstall Place was purchased in the defendants' names. Both places were then conveyed to a third person, who reconveyed the land to the plaintiff-father, the defendant-son and the defendant Virginia, then the latter's wife, as joint tenants with rights of survivorship. On the same date in 1966, all three parties mortgaged the two tracts as one to the Farmers Home Administration to secure a loan of $10,500.00 to discharge the interim financing obligation.

The plaintiff lived on the River Place; the defendants lived on the Haptonstall Place. The father paid the taxes on the River Place; and the son and his wife paid the taxes on the Haptonstall Place, carried separately for tax purposes on the county tax records. The defendants made the payments on the mortgage.

The defendant and his wife were married in 1953, divorced in 1967, remarried and again divorced in 1974. In the 1967 divorce proceeding, both in their pleadings alleged their real property to be "240 acres of land [Haptonstall Place] and an additional 400 acres of land [River Place] held for financing purposes only, all of which is subject to a real estate mortgage in the amount of Ten Thousand Five Hundred Dollars." Testimony of the defendant-son in the 1974 divorce action was as follows:

"Q   And in fact that [River Place] was transferred to you in return for your promise to look after him, was it not?

"A   No, it was not. It was for security reasons for this mortgage on F.H.A. That is the only reason my name went on that deed." [1]

The plaintiff contends that the exchange of deeds was arranged and accomplished only for the purpose of creating suitable security so that the defendants could buy the Haptonstall Place at that time. When the Farmers Home Administration mort-

---

1. Other parts of the son's testimony in the divorce action are to the same effect: Q "What property do you own? A I own 231 acres * * * [Haptonstall Place]." In referring to the River Place, A "I think there's 440 acres. That belongs to my dad." Q "What's the ownership of that land? A My father, Norman B. Allen, Sr." Q "You're not the owner of an undivided one-half interest of that ranch? A It may be an undivided interest, but it was for security reasons so I could borrow money to buy this other ranch with, and that was the only reason. F.H.A. required my name on it."

gage was satisfied, the River Place was to be returned by conveyance to the plaintiff-father. The Haptonstall Place would remain the sole and separate property of the defendants. None of this agreement was in writing but was developed by testimony. The appellant claims the deeds are absolute as on their faces shown. The trial judge found that the "parties intended, represented and agreed that the lands [River Place] * * * was [sic] to revert and again be the sole property of the plaintiff and the lands and premises [Haptonstall Place] * * * would be the sole property of the defendants."

The questions presented on appeal with respect to the circumstances of this case are:

1. Does the parol evidence rule preclude reformation of a deed complete in its terms?

2. Is the oral agreement to recovery void as violative of the statute of frauds, § 16–1, W.S.1957, C.1965, in pertinent part, as follows:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

"First—Every agreement that by its terms is not to be performed within one year from the making thereof;

* * *

"Fifth—Every agreement or contract for the sale of real estate, * * *."

█ We have narrated the happenings and proceed on the basis that the parties did orally agree that the transfer of the River Place to the defendants was solely for the purpose of giving them property adequate to secure a loan for their benefit and that upon satisfaction of the mortgage to the Farmers Home Administration, it would be reconveyed to the plaintiff. No consideration passed to the father from the son or his wife. This is done pursuant to the oft-repeated principle that we must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. *Peters Grazing Association v. Legerski*, Wyo.1975, 544 P. 2d 449, 455, and references there footnoted. Any further facts that may be set out in this opinion are within the evidence shown by the record or may be reasonably inferred.

█ In broad spectrum, courts give lip service to the familiar rule that a written instrument, absolute on its face, cannot be varied by parol testimony but, as observed in *North American Uranium, Inc. v. Johnston*, 1957, 77 Wyo. 332, 348, 316 P.2d 325, 330, citing 3 Corbin on Contracts § 329, the rule has so many vagaries that it is the despair of law teachers and law writers. In *North American*, it is recognized that a transaction may be integrated into a complete document only partially and in that posture, parol evidence is not admissible with respect to the part reduced to writing but parol evidence is admissible to prove that part not reduced to writing. The latter does not contradict or vary the terms of the instrument. *Parkinson v. Roberts*, 1958, 78 Wyo. 478, 329 P.2d 823, 824; *Bachmann v. Hurtt*, 1919, 26 Wyo. 332, 340, 184 P. 709, 711. The state of facts here is that the parol evidence received is admissible in that it does not vary the terms of the deed to the straw man and the deed to the defendants but explains their purpose and proves an oral agreement to reconvey entered into previous to their execution.[2]

2. While we need not and do not utilize it as a point upon which to decide this case, an interesting annotation appears in 71 A.L.R.2d 382, 384, expressing the view that as between parties to a written agreement, oral evidence is admissible to show that the writing was a sham and not intended to create legal relations. We also only note that courts jealously scrutinize transactions, without consideration, between persons having a fiduciary and confidential relationship with each other, such as son and aged father. *Bergren v. Berggren*, 1957, 77 Wyo. 438, 455, 317 P.2d 1101, 1107.

**1142**

■ The defendant himself has established the agreement and he is bound by the doctrine of judicial estoppel. In the earlier divorce litigation, the defendant-son, in order to prevail with respect to the ranch property as against his wife, had to rely on his agreement with his father that he held the River Place in his name only for the purpose of furnishing security to the Farmers Home Administration to enable him to borrow money to buy the Haptonstall Place.

■ The principle, while denominated judicial estoppel, is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings, as here. 31 C.J.S. Estoppel § 117, pp. 624–625.[3]

The role of judicial estoppel has been accepted in this state. *Hatten Realty Co. v. Baylies,* 1930, 42 Wyo. 69, 89–93, 290 P. 561, 72 A.L.R. 587. It was there held that where a man is successful in a position taken in a previous court proceeding, that position rises to the position of conclusiveness. It constitutes a solemn and sworn acknowledgment of the correctness of plaintiff's claim. Following the same reasoning reached in *Hatten,* it would be highly inequitable for the defendant to have a decree in his divorce case holding the property not to be his and at the same time be held the owner of an interest in this proceeding. It is that very inconsistency that judicial estoppel will not tolerate. Defendant's statements in the previous action are the very highest order of evidence against him and are entitled to judicial sanctity. He cannot play hanky-panky with the courts of this state and thus interfere with the integrity of the judicial system. See *Parkinson v. California Co.,* 10 Cir. 1956, 233 F.2d 432, 437–438, for a discussion of *Hatten.*

■ We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state[4] and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require,[5] particularly on a point so fundamental that we must take cognizance of it.[6]

We hold the parol evidence of the whole agreement admissible under the circumstances of this case.

■ Now, for the statute of frauds and its applicability. The very language of part Fifth of the statute leaves it inapplicable. There was no contract for the *sale* of lands; the title was lent for a specific purpose. The agreement involved no *sale* in any sense of the word, let alone its ordinary sense. A contract for the sale of real estate contemplated by the statute of frauds, § 16–1, W.S.1957, C.1965, is one for the transfer of property or real estate, for a fixed price in money, or its equivalent. *Mecum v. Metz,* 1924, 30 Wyo. 495, 503, 222 P. 574, 576, reh. den. 32 Wyo. 79, 229 P. 1105.

3. The cases bear out the rule. *In re Estate of Cohen,* 1970, 105 Ariz. 337, 464 P.2d 620; *Harrell v. Horton,* Okl.1965, 401 P.2d 461; *Behrens v. Baldenecker,* 1956, 76 S.D. 327, 77 N.W.2d 917; *Long v. Knox,* 1956, 155 Tex. 581, 291 S.W.2d 292. For an extremely extensive and interesting discussion of the doctrine, see the old case of *Farley v. Frost-Johnson Lumber Co.,* 1913, 133 La. 497, 63 So. 122, L.R.A.1915A, 200, Ann.Cas.1915C, 717.

4. Section 2, Article V, Wyoming Constitution.

5. *State Highway Commission v. Triangle Development Co.,* Wyo.1962, 369 P.2d 864, on rehearing 371 P.2d 408.

6. *Oedekoven v. Oedekoven,* Wyo.1975, 538 P.2d 1292, 1295.

The agreement may fall within the terms of part First of the statute so we still must concern ourselves with the applicability of that provision, assuming that technically the words embrace the oral agreement with which the court is confronted. At the time the contract was made, it could have reasonably been anticipated that the mortgage to the Farmers Home Administration would be in force for over a period of one year. (The mortgage copy in evidence is illegible as to its exact term.) In any event, at the time of trial, some eight years later, there was only an unpaid balance of $100.00.

■ The oral agreement was partially performed. The plaintiff, pursuant to the agreement, through a straw man, conveyed an interest in the River Place to the defendant and his wife. He performed that part of his bargain. All three then mortgaged the property to the Farmers Home Administration in order to acquire funds to purchase the Haptonstall Place for the defendants. Plaintiff performed that part of his bargain. The defendants alone have substantially paid off the mortgage, so that part of the agreement has been performed. In order to complete performance of the oral agreement, it is only necessary for the defendants to pay off the Farmers Home Administration mortgage in full and convey their paper interest in the River Place back to the plaintiff and for the plaintiff to convey his paper interest in the Haptonstall Place to the defendants. There is no indication that plaintiff has ever been unwilling to do that. For all intents and purposes the plaintiff has fully performed; he makes no claim to any interest in the Haptonstall Place.

■ If performance on one side of a contract is fully executed, the contract is not within the statute of frauds. *Hageman & Pond v. Clark*, 1951, 69 Wyo. 154, 172, 238 P.2d 919, 926.

Even if it should be considered that there has not been full performance by the plaintiff because he has yet to convey his paper interest in the Haptonstall Place to the defendants, his substantial part performance is enough to remove the contract from the statute of frauds. *Crosby v. Strahan's Estate*, 1958, 78 Wyo. 302, 324 P.2d 492. Even though the plaintiff in *Crosby* failed to prove even part performance, the court fully discussed the rule and the performance necessary to come within the rule. In 78 Wyo. at 316, 324 P.2d at 497, this court said:

"* * * The promisee of an oral contract, in order to be able to rely on the doctrine of estoppel [against the defendant's claim that the contract is within the statute of frauds], must be able to show that he has changed his position substantially for the worse and that he has incurred unjust and unconscionable injury and loss. * * *"

Then, also, in *Crosby*, 78 Wyo. at 320, 324 P.2d at 499, the doctrine of estoppel was collated to the doctrine of partial performance as based on estoppel and said that the part performance to take an oral agreement to convey real estate outside the statute of frauds must be substantial performance and of a sort that refusal to enforce the agreement would not only deny intended contract rights but cause an unjust and unconscionable injury. See also *Butler v. McGee*, Wyo.1962, 373 P.2d 595, 597.[7] Such would be the case here. The plaintiff

---

7. 8A Thompson on Real Property (1963 Replacement) and 1975 pocketpart § 4463, p. 358, introduces his treatment of the subject of partial performance as taking the contract out of the statute of frauds by saying:
"The statute of frauds has been spoken of as being senescent but not moribund. Many courts have expressed a strong dislike to the doctrine as more likely to create than to prevent actual fraud. So equitable doctrines are to be found intruding into the field to prevent a literal application of the statute where injustice would ensue. * * *"
The Wyoming cases we cite are consistent with Thompson's conclusion that the doctrine of part performance taking a transaction away from the statute of frauds is well grounded in the law.

would lose a substantial interest in his ranch, never intended by the parties and if under the statute would be unfair and inequitable.

An agreement between parties may consist of one or more than one document, such as an agreement to make an agreement, deeds, as here, mortgage, and perhaps after their execution, an agreement to reconvey upon the happening of an event. We are only concerned here with the whole agreement of the parties. A reformation decree does not require the parties to execute any new instrument or instruments. The decree itself constitutes the only instrument necessary and is of the highest order.[8]

The action filed in the district court was one for a declaratory judgment requesting adjudication of the plaintiff's rights under the deeds. Apparently, the trial became one for reformation and that relief[9] was awarded by the trial court. A reformation decree does adjudicate the rights of the parties. The case was presented to us as one only in reformation. However, in order to here avoid another action for specific performance when the purpose

of the reformation has been served, the trial court should anticipate that potential. The court's decree should include a provision so providing; we have the authority to modify the district court judgment and decree. Rule 72(c), W.R.C.P.[10] The modified decree should also provide for reconveyance.[11]

The evidence is firm that neither plaintiff nor defendants at the inception of the agreement ever intended that the River Place belong to the defendants except for the very limited purpose for which it was conveyed. The trial court properly allowed reformation of the conveyance to conform to the intention of the parties.

Affirmed with directions to the district court to modify its judgment and decree consistent with this opinion.

McCLINTOCK, Justice (dissenting).

I do not disagree with the majority of the court that plaintiff may have been entitled to some relief in this case. However, I think that neither the trial judge nor the majority are clear as to the manner in which the two deeds should be reformed. Affirmance of this vague order can only

---

8. 3 Corbin on Contracts, § 615, p. 737, states: "Seldom, it is believed, has a decree for reformation contemplated the actual redrafting and execution of a reformed document. The decree itself fixes the rights and duties of the parties and the terms of their obligation. * * * "

9. Section 1–1058, W.S.1957, provides as follows: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

10. Rule 72(c), W.R.C.P., provides as follows: "(c) *Review by Supreme Court.* A judgment rendered or final order made by the district court may be reversed in whole or in part, vacated or modified by the supreme court for errors appearing on the record."

11. Rule 70, W.R.C.P., provides: "If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution upon application to the clerk."

result in a perversion of legal processes. I have no wish to revert to the ritualistic shackles of common-law pleading and remedies and am as ready as the majority to accept the equitable principle of reformation as a well-established remedy in the jurisprudence of this state. I simply believe that it is without pertinence to this action.

I agree that under certain circumstances an oral agreement can be taken out of the scope of the Statute of Frauds but am concerned that the factual situation basic to such exception may not have been developed in the evidence and certainly the facts of this case were not considered by the trial court upon principles applicable thereto. I would therefore reverse the judgment and remand the proceedings to the trial court with directions to take further evidence as necessary to make a factual determination if there is justification for entry of a decree of specific performance under principles enunciated by this court.

It puzzles me that the majority opinion at some length discusses the effect of partial performance upon the validity and enforceability of an oral contract which would otherwise be within the prohibitions of the Statute of Frauds, says nothing about the principles of reformation, and yet concludes: "The trial court properly allowed reformation of the conveyance to conform to the intention of the parties." The complaint sought no reformation of the deeds, made no allegation that through fraud or mistake they did not effectuate the actual agreements of the parties and the prayer was only for a declaration as to the validity of the oral agreement that the properties would be reconveyed into separate ownership after the jointly-held title had served

the purpose of providing acceptable security as desired by the Farmers Home Administration. In *North American Uranium, Inc. v. Johnston,* 77 Wyo. 332, 349, 316 P.2d 325, 331 (1957), this court conceded the validity of argument that it could be shown through parol that an agreement was entered into through fraud or mistake, and said:

> "* * * But that was not made an issue in this case, and we cannot say that the parties voluntarily enlarged the issue. In fact the contrary appears. Fraud and mistake must not alone be proven, but must also be pleaded if the parol evidence rule is not to apply."

The pretrial memoranda and order disclose no issue as to reformation and during the course of the trial there are continuing indications that plaintiff's counsel was relying on an oral agreement plus partial performance to justify his action. Notwithstanding the continued absence of any claim of mistake, the judgment vaguely refers to "the mistake as to the effect of the deeds."[1] The trial court's reformation of the deeds to incorporate therein language that "defendants' interest in plaintiff's lands and premises is a security interest only" appears to me to be completely meaningless. Under the clear terms of the agreement the security interest was in the Farmers Home Administration and I find nothing indicating that there was to be any security interest as between the parties. However reformation crept into the case, I am convinced that it was not applicable and should not be the basis of relief.

More importantly, however, it is my understanding of the law of reformation that this salutary remedy is afforded only in situations where through fraud, mistake,

---

[1] After finding that the parties intended that part of the jointly-held land was "to revert and again be the sole property of the plaintiff" and that the other part "would be the sole property of the defendants" the court further found "that by reason of the original intention and representations of the parties, the *mistake as to the effect thereof,* and the subsequent conduct of the defendants, the war-

ranty deeds heretofore mentioned should be reformed so as to provide that defendants' interest in plaintiff's lands and premises is a security interest only and that plaintiff's interest in the lands purchased by defendants was, and is a security interest only." The emphasized portion of this quotation represents the only reference by the court to any mistake.

or other inadvertence the instrument as drawn does not correctly express what was clearly and intentionally agreed upon by the parties to the instrument.[2] I find nothing in this record to indicate that the parties to these deeds intended for them to state anything but exactly what was contained therein. They intended to satisfy a requirement of the FHA that property held in joint tenancy be mortgaged as security for the loan. By their deeds they effectively created that estate. As agreed upon by them it was only at some future time and after the joint estate had served its purpose as such security that separate estates were to be revested in the original and separate owners. I therefore must ask why this court should attempt the torturous and tortuous process of changing these plain deeds into something they were not?[3]

While I agree that evidence as to this supplemental or side agreement was not received in violation of the parol evidence rule, I do not agree that the courts merely give lip service to the rule. See *Johnson v. Soulis*, Wyo., 542 P.2d 867, 873 (1975). It is an important rule. Conceding that, as stated by Corbin[4] "the rule is so variable in its operation as to be the despair of law teachers and writers," it is nevertheless frequently applied by courts, and I believe that it has a well-established place in our

jurisprudence and deserves no denigration at our hands. I do not think that my Brothers of the majority would despair or hesitate to apply it in many and varied situations. To recognize that it is subject to exceptions is not to deny its general merit. In the proper case I think that an exception is to be considered.

However, I would not rely upon the doctrine of judicial estoppel to avoid that rule. Without attempting an exhaustive examination of the subject, I note that the opening paragraph on the subject in 31 C.J.S. Estoppel § 1, p. 288, in large measure predicates application of this principle on the act of one person which has induced another person to take some action by which he will be prejudiced unless the first person is held bound by his act. One may not mislead another and then repudiate his own act to the latter's injury. In *Gay Johnson's Wyoming Automotive Service Co., Inc. v. City of Cheyenne*, Wyo., 367 P.2d 787, 788 (1961) it was said:

> "Even the interveners recognize that the defense of estoppel is available only where the actions of a plaintiff have operated *to the prejudice of a defendant.*" (Emphasis added)

Similarly, without any claim to complete knowledge on the subject, I find in 31 C.J.S. Estoppel § 117, p. 60 et seq. numerous indications that judicial estoppel,

---

2. See *Stoll v. Nagle*, 15 Wyo. 86, 86 P. 26 (1906), and *Grieve v. Grieve*, 15 Wyo. 358, 89 P. 569 (1907), in both of which reformation was refused, and *Russell v. Curran*, 66 Wyo. 173, 195, 206 P.2d 1159, 1167 (1949), where it was said that the parol testimony and documentary evidence "require[d] a conclusion that the evidence for the plaintiff in the District Court was clear, satisfactory, and convincing that through mutual mistake the sale contract involved herein did not include the furniture in the house *as it should have done* and a reformation of the contract was properly ordered by that court." (Emphasis added) See *Pfister v. Brown*, Wyo., 498 P.2d 1243 (1972) for our most recent affirmation of the principles set forth in *Stoll* and *Grieve* as governing reformation.

3. I am not concerned that the instrument itself be physically reformed to include what-

ever words the majority feel must be inserted therein to carry out the intended but unexpressed provisions of the agreement, but am deeply concerned that they accept the very fuzzy declaration of the trial court. In *Russel v. Curran*, 66 Wyo. 173, 186, 206 P.2d 1159, 1163 (1949), the judgment of the trial court was specific that the contract " 'be amended by inserting following the words * * *.' " I for one have been unable to determine what language should have been inserted in the deeds that was not, and I think that consideration of the case along those lines would have convinced the majority that the case was not one for reformation.

4. 3 Corbin on Contracts, 1951, § 589, p. 329, quoted in *North American Uranium, Inc. v. Johnston*, 77 Wyo. 332, 316 P.2d 325 (1957).

treated as a form of equitable estoppel, is applied only in case of prejudice. Id. p. 618.

I do not venture to say that testimony in court may not in some cases be accepted in a subsequent hearing as preventing a change of testimony, but in this case, even if we admit that there may be an estoppel against the younger Allen, preventing him from denying the truth of his testimony in the divorce case between himself and his wife, also a party to this action, and which estoppel was effective as to nonparties to that action, such estoppel might only prevent him denying the truth of his former testimony. Under the recognized principle that the parol evidence rule is one of substantive law, permitting reliance upon the rule even though the evidence was received without objection, *North American Uranium, Inc. v. Johnston,* supra, 77 Wyo. at 348, 316 P.2d at 330, I think it could still be claimed that the estoppel was ineffective to establish the legal validity of the oral agreement.

I consider the evidence admissible and probative under *Bachmann v. Hurtt,* 26 Wyo. 332, 184 P. 709 (1919), cited by appellee for the proposition that parol evidence is admissible to show a separate oral agreement on a subject not included in or disclosed by the writing, and not inconsistent with its terms. See also *Parkinson v. Roberts,* 78 Wyo. 478, 487, 329 P.2d 823, 826 (1958). As previously said in my

analysis of the transaction, the parties intended what they said in the deeds but the deeds were not intended as the full integration of their agreement. The testimony given does not contradict or vary the deeds; it goes on to establish an additional agreement. I think that it was competent and the only question to me is, then, the application of the Statute of Frauds.[5]

While I have not agreed with my Brother Rose in his dissent as to the applicability of the parol evidence rule, I most heartily endorse his objection to that paragraph of the majority opinion beginning with the sentence, "We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties."

In *Crosby v. Strahan,* 78 Wyo. 302, 314, 324 P.2d 492, 496 (1958) this court, while refusing to find that the facts of that case took it out of the Statute of Frauds, pointed out with quotation from strong authority that "a mere failure or refusal to carry out an oral contract within the statute of frauds does not take the case out of that statute," so that a showing of more than nonperformance was necessary.

" * * * The doctrine of estoppel in pais [6] is to prevent injury arising from actions or declarations which have been acted on in good faith and which it would be inequitable to permit the party to retract. * * * Not every trivial injury will invoke the doctrine of estoppel.

5. In considering our Statute of Frauds, I cannot agree with the majority that only the First clause (contract not to be performed within one year) is applicable. I think that the transaction is a sale of property within the Fifth clause of the statute and do not consider *Mecum v. Metz,* 30 Wyo. 495, 503, 222 P. 574, 576, reh. den. 32 Wyo. 79, 229 P. 1105 (1924) as authority that it is not. I prefer to refer to *Canada v. Ihmsen,* 33 Wyo. 439, 446, 240 P. 927, 929, 43 A.L.R. 1010 (1925) where without citation of *Mecum* this court said: "A will is considered in the nature of a conveyance by way of appointment. A devisee comes within the legal definition of one who takes by purchase, and the courts are nearly unanimous in holding, under statutes such as we have in this state, that an agree-

ment to devise real property is within the statute of frauds and must be in writing." The Fifth clause had been specifically raised as a bar to the action.

6. The pleadings, pretrial memoranda, and pretrial order do little in this case to disclose the exact theories involved. It has been said by this court that estoppel should be specially pleaded. *Sturgeon v. Brooks,* 73 Wyo. 436, 281 P.2d 675 (1955); *McCarthy v. Union Pacific Ry. Co.,* 58 Wyo. 308, 131 P.2d 326 (1942). Rule 8(c), W.R.C.P. requires that it be pleaded where it is raised as a defense. I am bothered by this and feel that it would have been desirable to have a much more careful delineation of the issues.

The promisee of an oral contract, in order to be able to rely on the doctrine of estoppel, must be able to show that he has changed his position substantially for the worse and that he has incurred unjust and unconscionable injury and loss." 78 Wyo. at 316, 324 P.2d at 497.

This court further quoted with apparent approval from *Bennett v. Harrison,* 115 Minn. 342, 132 N.W. 309, 311, 37 L.R.A. N.S., 521 in pertinent part as follows (78 Wyo. at 319, 324 P.2d at 499):

" ' * * * The mere denial of the right promised by the oral agreement, the loss of that which existed only by virtue of the oral promise, being deprived of the bargain, does not create an exceptional situation as to the statute, but the very situation the statute covers. To take a case out of the statute because of such resulting loss or injury annuls the statute. The injury or loss which would result from the enforcement of the statute must arise from the acts done in performance or in pursuance of the oral agreement, *and such acts must so far alter the situation of the parties seeking to avoid the statute that it would be unjust and against conscience to allow the other party, who has permitted such change to take place in pursuance of his oral agreement, to thereafter refuse to perform on his part.*'" (Emphasis added)

In the earlier case of *Johnson v. Maki,* 45 Wyo. 113, 118, 16 P.2d 46, 48 (1932) this court had no difficulty in enforcing an oral contract for the purchase of real property where the purchaser had paid the consideration therefor and moved into possession thereof, the fact of possession being accompanied by payment of rental by the deceased vendor to his vendee. But it was there said that "The possession required is one that is exclusive of and not shared by the vendor." By payment of rent the vendor "virtually acknowledged plaintiff

to be the owner of the property, and his possession as tenant was the possession of the plaintiff." In *Butler v. McGee,* Wyo., 373 P.2d 595, 597–598 (1962) this court adhered to the rule of *Johnson* but continued:

"However, in order for the possession to be sufficient as a part performance of an oral contract, the acts constituting performance must be referable solely to the contract sought to be enforced, and not such as might have been referable to some other or different contract."

In the case at Bar it is fairly clear that to some extent at least the plaintiff continued in possession of the premises after they were transferred into joint tenancy, but such possession may be completely consistent with the joint tenancy and we therefore have an ambiguity in this case that was not present in *Johnson.* At least until after the action was filed plaintiff paid the taxes on the River Place. His son paid the taxes on the Haptonstall Place and made all of the mortgage payments. The son testified that both parties owned cattle and that he ran some of his cattle on the River Place. It is not clear whether livestock of the plaintiff were run on the Haptonstall Place. The son apparently took care of the cattle of both parties, this service being rendered, as he testified, "for what he [the father] called rent on the place down there." Perhaps this indicates payment of rental within the purview of *Johnson* and such payment would be consistent with the plaintiff's theory that the properties were treated as equitably or contractually the separate and distinct properties of the two men.

Partially digressing for a moment, it seems to be well established that in those instances where one has paid part of the consideration for the purchase of realty, found to be unenforceable by reason of the Statute of Frauds, any consideration that he has paid is refundable.[7] Otherwise the

7. "Payments made under a contract unenforceable by reason of the statute of frauds may be recovered back where the other party sets up the statute and declines to perform or where the contract is mutually abandoned." 37 C.J.S. Statute of Frauds § 256, p. 778 (black type).

party refusing performance would not only have his property but would have the money which the purchaser has paid and this is considered unconscionable. If the money is repaid, all that the promisee has lost is the benefit of his bargain. But we must ask ourselves in this case, how could rescission be effected or retribution be made so that notwithstanding the refusal of the son to perform his part of the agreement, the parties can be restored to their original status? The answer that occurs to me is that the only way the parties can be placed in their original position is by restoration of their separate properties which is in effect specific performance of the agreement to reconvey. This, then, is not a case of a mere loss of the benefit of the bargain. Within the language of *Bennett,* supra, as quoted in *Strahan,* supra, a substantial injury would arise from acts done in performance of the agreement, and plaintiff has so far altered his situation that it would be unjust and against conscience to allow the son, who has permitted the change to take place, to refuse to perform on his part.

Under such circumstances, it occurs to me that the refusal of the promissors to carry out their promise, even though it is a refusal some appreciable time after the agreement could have been made without fraudulent intent then present, does to all practical intents and purposes result in a fraud upon the plaintiff. I can conceive of no equity in permitting the son and daughter-in-law to retain a two-thirds interest in some 440 acres of land with the father only having a one-third interest in 230 acres. Assuming that the lands are roughly equivalent in value per acre, the father would have given up a substantial portion of his property for no other reason than that he wanted to help out a son. If this case is not one for specific performance, I would have a difficult time finding one more suitable.

Under this view of the case, and had the district court entered an order for specific performance on a general finding in favor of the father, I would have little difficulty in affirming the judgment. Relief can be given without warping the principles of reformation, the pertinence of which principle I deny and which the majority does not consider. I certainly feel that application of the principle of estoppel to assert the statute would prevent an unconscionable situation. But since the trial court has disposed of the matter on a theory of reformation, finding that the parties intended to do something with their deeds that was not expressed therein, I do not believe that the case is in proper position for affirmance by this court. The factual situation may or may not have been fully developed and there are enough uncertainties therein that I think the case should be remanded to the district court with instructions to take evidence on the manner in which the farms have been held in possession and operated and under the principles which we have enunciated enter a decree granting or denying specific performance of the agreement to reconvey.

ROSE, Justice, special dissent; and partial concurrence with and partial dissent from the dissent of McCLINTOCK, J.

I am compelled to dissent from the majority opinion upholding the trial court. Particularly, I dissent from the holding of the majority opinion with respect to the parol evidence rule and the doctrine of judicial estoppel. Since my dissent discusses these points, and is dispositive of my position, I do not make any comment about the statute-of-frauds question except to say that I concur in the part of the dissent of Justice McClintock which discusses that subject. I do not agree with the aspect of his dissenting opinion which finds it to have been proper to admit parol evidence under the facts presented by this appeal.

In my judgment, the parol evidence rule was violated. My opinion dissenting from the majority opinion and its conclusions and from Justice McClintock's position on the parol evidence rule follows. I also

take issue with the majority's application of the doctrine of judicial estoppel.

There were two warranty deeds in issue here. The first was dated the 24th day of February, 1966, and filed of record in the office of the county clerk of Crook County, Wyoming, wherein Norman B. Allen, a single man, Norman B. Allen, Jr., and Virginia R. Allen, husband and wife, appear as grantors and Grace Eaton, a single woman, is the grantee. Deed number two is a reconveyance of the same land by warranty deed the 24th day of February, 1966, and filed of record in the office of the county clerk of the aforesaid Crook County. In the latter deed Grace Eaton, a single woman, conveyed as a grantor to Norman B. Allen, a single man, Norman B. Allen, Jr., and Virginia R. Allen, husband and wife, as joint tenants with rights of survivorship.

There were no ambiguities or relevant restrictions or reservations in the two deeds and they were regular on their face in all respects.

It is the contention of the appellant, Norman B. Allen, Jr., that the reconveyance does what it purports to do, i. e., transfers a one-third interest in all of the described property to the named grantees. Allen, Sr., plaintiff-appellee, urges that the reconveyance instrument was made for purposes of security only and that there was an oral agreement entered into contemporaneously with the execution of the deeds which provided that upon payment of the mortgage, the Allens, Jr., would reconvey to Allen, Sr., all of their right, title and interest in the part of the properties known as the "River Place."

At no time—either at the trial court level or here—has Allen, Sr., asserted that the Allens, Jr., are estopped to deny the alleged oral agreement.

The majority opinion upholds the lower court where that court found

" . . . the 'parties intended, represented and agreed that the lands [River Place] * * * was [sic] to revert and again be the sole property of the plaintiff and the lands and premises [Haptonstall Place] * * * would be the sole property of the defendants.' "

The questions presented on appeal, as stated by the majority, are:

"1. Does the parol evidence rule preclude reformation of a deed complete in its terms?

"2. Is the oral agreement to recovery void as violative of the statute of frauds, § 16–1, W.S.1957, C.1965, . . . "

## PAROL EVIDENCE RULE

The majority comforts its opinion with this thought:

"In broad spectrum, courts *give lip service* to the familiar rule that a written instrument, absolute on its face, cannot be varied by parol testimony but, as observed in *North American Uranium, Inc. v. Johnston,* 1957, 77 Wyo. 332, 348, 316 P.2d 325, 330, citing 3 Corbin on Contracts § 329, the rule has so many vagaries that it is the despair of law teachers and law writers . . . " [Emphasis supplied]

I not only disagree with this statement, but I further contend that the parol evidence rule should be applied to exclude the testimony concerning the oral agreement in this case.[1]

---

1. Footnote 2 of the majority opinion makes mention of the concept that oral evidence is admissible to show that a writing is a sham and not intended to create legal relations. 71 A.L.R.2d 382, 384, is cited for this proposition. Without discussing this in detail, I observe that the last-cited A.L.R.2d article stands as authority for the proposition that, if such a defense is to be relied upon,

it must be alleged and proven. The article says, at page 383:

" . . . To come within the scope of the present annotation, a case must involve a situation in which *it is alleged* by one of the parties that a written agreement relied upon by the opposing party is a sham agreement of the kind described above; furthermore, the court, when deal-

In *North American Uranium, Inc. v. Johnston,* supra, a written agreement provided for the sale of certain mining claims. The purchaser of the claims based his right to ownership on the instrument of conveyance, which on its face gave him absolute ownership. The sellers of the claims attempted to introduce parol evidence showing that the parties agreed that the instrument was to be merely a ninety-day *option to purchase* the claims. Blume, C. J., held that where a written agreement provided for the sale of certain described mining claims, the theory that such agreement was merely a ninety-day option to purchase contradicted the terms of the writing and, under such circumstances, parol evidence is not admissible to prove an option. For these reasons the Justice held the trial court to have prejudicially erred in receiving it and basing its judgment in whole or in part on such testimony.

In *Hoshaw v. Cosgriff,* 8 Cir., 247 F. 22, 26 (1917), it was held:

" . . . it is elementary law that a contract completely reduced to writing cannot be contradicted, changed, or modified by parol evidence of what was said and done by the parties to it, prior to or at the time it was made . . . "

In *Hoshaw* it was urged that a deed was given to a bank as security and not for transfer, the court holding that oral testimony could not be even introduced to make such proof—the reason for the decision was that to permit such evidence to vary a written instrument would destroy the value of all written instruments. 247 F. at page 26.

In *Bushnell v. Elkins,* 34 Wyo. 495, 245 P. 304 (1926), it was alleged that a promissory note regular on its face was really given for the purpose of inducing purchases at a store and that so long as purchases were made the note need not be paid. The court would not hear the oral representations and held them inadmissible, saying that when the parties have put their engagements in writing and they are certain and definite, it is to be concluded that the whole contract of the parties was reduced to writing and the contract cannot be contradicted, added to or varied by parol evidence. 245 P., page 306.

We held in *Soppe v. Breed,* Wyo., 504 P.2d 1077, 1078:

" . . . limitations imposed by the parol evidence rule are directed at a showing which would contradict, vary, or alter the terms of the instrument . . . " Citing *Parkinson v. Roberts,* 78 Wyo. 478, 329 P.2d 823, 826.

In *Parkinson,* supra, at page 826 of 329 P.2d, this court said:

"We turn then to a consideration of the court's rulings which admitted testimony of conversations occurring between the contracting parties prior to the execution of the purchase offer to the effect that Parkinson had to sell his house to raise $7,400 and that he was to have until July 1 to complete the transaction. Defendants urge the well-recognized rule that the terms of a written agreement cannot be altered by parol testimony, citing *North American Uranium, Inc., v. Johnston,* [77] Wyo. [332], 316 P.2d 325. This rule—correct, although quite broadly stated—is subject to the limitation that oral statements made previous to the time of the execution of a written instrument may in exceptional cases be shown as part of the surrounding facts *if they do not contradict or vary the terms of the instrument.* See 20 Am.Jur. Evidence §§ 1147, 1160; 32 C.J.S. Evidence §§ 929, 959, discussing exceptions . . . " [Emphasis supplied]

ing with the parol evidence rule, *must have considered the effect of the agreement as a sham.*" [Emphasis supplied]
I further observe that the sham agreement philosophy was neither pled, proven, nor at any point relied upon in this case and is, therefore, not available for our consideration under Rule 8(c) Wyoming Rules of Civil Procedure, which is quoted in detail in footnote 3, infra. Therefore, I do not discuss the sham contract theory.

Therefore, the vagaries which arise as a consequence of the exceptions to which the majority opinion refers are restricted to circumstances showing the surrounding facts

> *"if they do not contradict or vary the terms of the instrument."*

I cannot reconcile the following statement from the majority with logic:

> " . . . The state of facts here is that the parol evidence received is admissible in that it does not vary the terms of the deed to the straw man and the deed to the defendants but explains their purpose and proves an oral agreement to reconvey entered into previous to their execution.²" [Majority's footnote 2]

The deed was regular on its face—contained no ambiguities whatsoever and was made at and about the same time as the purported oral agreements. Under all of the authorities cited hereinabove, there can be no testimony admitted for the purpose of explaining, changing or altering the terms of the written instrument. Based upon the case law of this court, I must take a position opposed to any representation which purports to say that a deed which on its face conveys property from A to B is not changed by an oral agreement which has the effect of *not* conveying the property from A to B. The effect of such tinkering destroys the integrity and efficacy of written instruments. For me, such an attack upon the written word makes a mockery of the very form and substance of reason and logic and I cannot accept it. I take no comfort from the argument that innocent third-party purchasers were not involved. The next time they will be if we do not stand here in protection of the written contract.

## JUDICIAL ESTOPPEL

The majority opinion seeks to inject a contention in the case which was never placed there by the parties or contemplated by them; nor was it contemplated by the trial court. It was not made an issue on appeal in this court. The majority says:

> "The defendant himself has established the agreement and he is bound by the doctrine of *judicial estoppel* . . ."
> [Emphasis supplied]

The majority then says:

> *"We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state* (citing, by footnote 4, Section 2, Article V, Wyoming Constitution) *and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it."* ² [Emphasis and parenthetical matter supplied]

Estoppel, like failure of consideration, fraud, statute of frauds, and other matters constituting an avoidance, are affirmative defenses³ and cannot be relied upon except when pled, nor can they be considered for the first time on appeal.⁴

---

2. See footnotes 5 and 6 of the majority opinion for the authorities cited.

3. Rule 8(c), Wyoming Rules of Civil Procedure is as follows:
   "(c) *Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, *estoppel*, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter consituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." [Emphasis supplied]

4. *Ranger Ins. Co. v. Cates*, Wyo., 501 P.2d 1255; *Title Guaranty Co. of Wyo. v. Midland Mortg. Co.*, Wyo., 451 P.2d 798; *Chi-*

There is no allegation in this case of estoppel, mistake, fraud, undue influence or over-reaching on the part of the son with respect to his father. Estoppel has never been a consideration until raised for the first time in the majority opinion here. The adjudication by the trial court was that the oral evidence showed that the deed in question was, in reality, a security instrument. There was not a word mentioned about estoppel in the court's pretrial or final order, and neither the appellant nor the appellee raises this affirmative matter by pleading, pre-trial memoranda, brief or argument to this court.

A question not raised in the trial court cannot be considered by the supreme court. *Mader v. James,* Wyo., 546 P.2d 190, 195.

I said in my dissent in *Simpson v. Petroleum, Inc.,* Wyo., 548 P.2d 1:

"The author of the majority opinion here wrote, very recently (February 12, 1976), in the cases of *Mader v. Fanning; James v. Fanning;* and *Mader v. James,* Wyo., 546 P.2d 190, 195:

" ' . . . A question not raised in the trial court cannot be considered by the supreme court. *Guggemos v. Tom Searl-Frank McCue, Inc.,* Wyo. 1971, 481 P.2d 48, 51; *Gaido v. Tysdal,* supra [68 Wyo. 490, 235 P.2d 741]. See also the multitude of cases cited in West's Wyoming Digest, Appeal and Error, ☜169.'

"In my judgment, the majority opinion in this appeal destroys the efficacy of this rule, rendering it so devastated and shattered as to be incapable of being longer relied upon by the Bench and Bar for appellate purposes."

My fears—expressed in the Simpson dissent—seem somehow prophetic!

It takes great restraint for me to rationally contemplate a holding which demolishes the requirements of the rules of civil procedure and case law by saying in effect that we can do whatever we want—no matter what the rules or case precedent say. To me, the majority opinion, when it says,

" . . . We are at liberty to decide a case upon any point which in our opinion the ends of justice require, . . . "

is really saying that we will first decide what we think the "ends of justice" are and then arrive at that conclusion in a way suitable to us whether or not the precedential and statutory vehicles are available—whether or not the issues are raised by the pleadings—pre-trial proceedings—the evidence—or the appellate documents. I do not contemplate this to be our role—our power—or our mission.

I am just as cognizant as my Brothers of the Court—and I like to think any other human being—concerning the doctrines of equity. What is right and fair and kind and good are the usual and ordinary adjuncts of the law because it is in these best human qualities that the law is born, nurtured and in which it survives; and yet—I know—as do we all—that there will be isolated instances when inequity will result while the great principles of law are being protected and guarded by the courts. The conclusion I would reach in this case may very well be such an example. But the conclusion is reached—not out of my choice and not because the tools of equity were not available—but because they were not utilized by those who had the duty to use them. We do not possess the power to correct those mistakes by authority of any rule of law with which I am familiar.

The law is not perfect. Still the greatest inequity of all will result in its abandonment in order to accommodate the impression of what we as judges—ignoring the guidelines of procedure and precedent—might, at the moment, decide is right or wrong, fair or unfair, equitable or in-

*cago & N. W. Ry. Co. v. Continental Oil Co.,* 10 Cir., 253 F.2d 468; *Sturgen v. Brooks,* 73 Wyo. 436, 281 P.2d 675; *Lellman v.*

*Mills,* 15 Wyo. 149, 87 P. 985; *McCarthy v. Union Pacific Ry. Co.,* 58 Wyo. 308, 131 P.2d 326.

equitable. To say, in the context of the majority opinion, that

" . . . We are at liberty to decide a case upon any point which in our opinion the ends of justice require, . . ."

seems to me to be a reaching out and embracing of such a dangerous philosophy.

I conclude, therefore, that for the reasons set out immediately above, estoppel should not have been a consideration in this opinion. Additionally, I would have held that under the rule of *Hoshaw v. Cosgriff*, supra, *Bushnell v. Elkins*, supra, *North American Uranium v. Johnston*, supra, *Soppe v. Breed*, supra, *Parkinson v. Roberts*, supra, and perhaps others, parol evidence should not have been allowed because it was introduced for the purpose of varying and altering the terms of the deeds. In other words, the evidence of a separate oral agreement with respect to the deeds was introduced for the purpose of showing that the parties did not intend that the instruments serve as warranty deeds as they purported to be—but they were intended to be something other than warranty deeds—namely security instruments. The effect of this oral testimony was given for the purpose of—and ultimately has had the effect of—altering and varying the terms of the instruments.

The reason for the parol evidence rule, as expressed and relied upon historically by this court, has been to save and preserve the integrity of the written word so that all may confidently rely upon their agreements which they have reduced to writing.

To play games with a warranty deed—in all respects regular on its face—by changing its effect through proof of an inconsistent oral agreement made by the parties to the deed at the time it was executed is—I think—to destructively attack the sanctity of all business and legal writings.

I would have reversed.